UNITED STATES of America
v.
Elias SAKA, Appellant,
No. 14871.

United States Court of Appeals
Third Circuit.

Argued Nov. 17, 1964.

Decided Dec. 17, 1964.

David F. Price, Brooklyn, N. Y. (Price & Iovine, c/o Robert I. Weiswasser, Brooklyn, N. Y., on the brief), for appellant.

David M. Satz, Jr., U. S. Atty., Stanley C. Van Ness, Asst. U. S. Atty., Newark, N. J., on the brief, for appellee.

Before MARIS, STALEY and GANEY, Circuit Judges.

MARIS, Circuit Judge.

The defendant, Elias Saka, appeals from a judgment entered in the District Court for the District of New Jersey on a jury verdict of guilty under two counts on an indictment. The first count charged him with possession of goods stolen from an interstate shipment exceeding $100 in value, knowing them to have been stolen, in violation of 18 U.S.C. § 659, and the second with transporting from Philadelphia, Pennsylvania, to Englishtown, New Jersey, and Farmingdale, New Jersey, approximately 4,000 dozen pairs of nylon hosiery, valued in excess

of $5,000, knowing them to have been stolen, in violation of 18 U.S.C. § 2314. The defendant was convicted and sentenced to imprisonment for one year on each count to run concurrently. Execution of the sentence was suspended and the defendant was placed on probation for a period of five years. In addition, a fine of $5,000 on each count was imposed upon him.

Upon this appeal the defendant asserts that the evidence was insufficient to sustain the verdict of the jury, that his trial was unfair and that his constitutional rights were violated. We find no merit in any of these contentions.

It appeared from the evidence produced by the Government that over 4,000 dozen pairs of nylon hosiery shipped by two mills in Charlotte, North Carolina, to the G. R. Kinney Company, Camp Hill, Pennsylvania, had been stolen in transit. A trailer containing the shipment disappeared from a truck terminal in New York City on March 6, 1961, and was recovered empty four days later in Newark, New Jersey. The cost of the stockings to the Kinney Company ranged from $4.70 to $9.25 per dozen; the retail prices ranged from 79 cents to $1.39 a pair. There were in the shipment 3,875 dozen pairs of long hose shipped by Davenport Hosiery Mills and 250 dozen pairs of over-the-knee hosiery Mill Style 810, Customer's No. 675, shipped by Chadbourn-Gotham, Inc. One stocking in each pair of the long hose had the Kinney Company's registered trade name "Revette" imprinted on the welt together with data as to the type of the hose. No similar imprint appeared on the over-the-knee hose, the name and type being printed on a cardboard header which was inserted at the top.

It appeared that the defendant was engaged in the business of selling merchandise, including nylon hosiery, at retail over the counter or at auction at several markets located in New Jersey. Emil R. Tetzner, the proprietor of a hosiery dye and finishing plant in Philadelphia, testified that the defendant and Joseph Brown brought between 3,000 and 4,000 dozen pairs of hosiery to his place of business and engaged him to remove the brand name "Revette" therefrom and to substitute the name "Nylons Unlimited" and repackage the hosiery. The hose were delivered to the dye house and about 1,500 dozen pairs were processed but the process proved difficult and about four weeks later the defendant removed all the hosiery. He paid Tetzner $1,045.00 for the work at the rate of 70 cents per dozen pairs. During the time that the hose were in the dye house one of the dye house employees found in a carton containing over-the-knee hosiery an invoice which referred to 250 dozen pairs of hose, Mill Style 810, Customer's No. 675, sold and shipped to G. R. Kinney Company by Chadbourn-Gotham, Inc., Charlotte, N. C. On June 10, 1961, after the defendant had admitted to F.B.I. agents that he had sold Revette brand hosiery but stated that he had none left, 74 dozen pairs were found exposed for sale by an agent at the Collingswood, New Jersey, auction market.

The defendant's truck driver Dennis J. Slowey, testified that he had helped to remove cartons containing Revette brand hosiery from the dye house in Philadelphia, had loaded them into the defendant's panel body truck and had driven the truck a few blocks away where it was left parked, Slowey and the defendant returning to New Jersey in the defendant's automobile. Three or four days later he and the defendant returned to Philadelphia and Slowey drove the truck back to New Jersey, where, he at first testified, he unloaded the hosiery from the truck at the defendant's auction premises at Englishtown. Under cross-examination Slowey stated that he drove the truck from Philadelphia to a lot near the defendant's home in Neptune, New Jersey, and that he did not examine the contents of the truck.

The defendant testified in his own defense that he had purchased two lots of Revette hosiery from a person named Horowitz. He said that he wanted to use the first lot of 1,100 dozen pairs in his mail order business under his trade name

"Nylons Unlimited" and accordingly brought these stockings in his truck from Englishtown, New Jersey, to the Tetzner dye house in Philadelphia to have the brand name Revette removed and Nylons Unlimited substituted. He said that there were difficulties in doing the work and that only 93 dozen pairs were worked upon. About the third of April he removed the hosiery from the dye house and it was loaded on his truck by Slowey who parked the truck in Philadelphia after which they both returned to New Jersey in the defendant's automobile. On the following day, the defendant said, he drove back to Philadelphia, drove the truck to the place of business of a friend in Philadelphia to whom he then and there sold and delivered the entire lot of more than 1,000 dozen pairs for $4.00 a dozen which was paid in cash. The defendant further testified that the second lot of 700 dozen pairs of Revette hosiery which he had purchased from Horowitz was delivered to him at the Englishtown market on March 18th for which he paid cash in the sum of $2,100.00. This Revette hosiery, he said, was openly exhibited and sold at auction or over the counter by him at his several places of business.

■ We are satisfied that the jury could properly find from the evidence, as it did, that the hosiery found in the defendant's possession was that stolen while in transit in interstate commerce to the G. R. Kinney Company and that the defendant knew that it was stolen merchandise. The defendant's conviction on count one must accordingly be sustained.

■ As an additional ground for reversal of his conviction under count two the defendant alleges that the proof of transportation from Pennsylvania to New Jersey of the hosiery worked upon in the Philadelphia dye house was insufficient. It is true that the witness Slowey was less than clear and consistent in his testimony as to the point in New Jersey to which he drove the defendant's truck from Philadelphia and as to whether he knew what the truck contained. There was, however, evidence that the defendant brought to Philadelphia over 3,000 dozen pairs of the hosiery, that 1,500 or 2,000 dozen pairs were returned to him by Tetzner with the trade name "Revette" intact and that hosiery with that trade name was subsequently offered for sale by him in New Jersey. It was for the jury to resolve the inconsistencies in Slowey's testimony in the light of the other evidence and we cannot say that they erred in finding that the hosiery in question was transported in interstate commerce from Pennsylvania to New Jersey.

■■ The defendant urges that the jury erred in not accepting his uncontradicted testimony that he sold this hosiery to a friend in Philadelphia and did not take it back to New Jersey. We cannot agree. For it was within the province of the jury to reject the defendant's testimony even though uncontradicted if in the light of the other evidence in the case it found that testimony to be unbelievable. Moreover there is sufficient support in this record for the jury's verdict on count two even if the proof as to transportation of the stolen hosiery from Pennsylvania to New Jersey had wholly failed. For the gravamen of the offense prohibited by 18 U.S. C. § 2314 and charged in count two is the transportation in interstate commerce of goods with the knowledge that they had been secured by unlawful means. The defendant himself freely admitted in his testimony that the hosiery in question had been transported by him from New Jersey to the dye house in Philadelphia, which was clearly a transportation in interstate commerce. This in itself was sufficient to sustain the conviction. United States v. Garvey, 2 Cir. 1945, 150 F.2d 767, 768.

■ The defendant further contends that the district court erred in denying his motion to suppress certain evidence which, he asserts, was procured by F.B.I. agents by an unreasonable search without a search warrant. It goes without saying that the constitutional provision against unreasonable searches and sei-

544

zures may not be relaxed, and that when officers desire to search a person's home they must have either a search warrant or a voluntary permission. United States v. Jeffers, 1951, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64; Pekar v. United States, 5 Cir. 1963, 315 F.2d 319. But, on the other hand, it has been held that if an officer sees the fruits of a crime, or what he has good reason to believe to be the fruits of a crime, freely lying upon a suspect's property, the officer is not required to look the other way or to disregard the evidence, merely because he is not armed with a search warrant. Ellison v. United States, 1953, 93 U.S. App.D.C. 1, 206 F.2d 476.

The evidence which the defendant sought to have suppressed was two cardboard cartons, a bill pertaining to 700 dozen pairs of stockings, the 74 dozen pairs of Revette hosiery taken by the agents at Collingswood and a receipt for these stockings signed by both the defendant and his wife. At the hearing on the motion to suppress, Agent Kirtley testified that the defendant freely and voluntarily cooperated with him in all phases of his investigation. The defendant pointed out the cartons, in fact emptying them of other goods which had been placed in them, so that the agent could examine them, and the stockings which were seized were publicly exposed for sale at the market. The district court found that the taking of these items was not the result of a search. And it further found that the bill for the 700 dozen pairs of stockings and the signed receipt for the 74 dozen pairs taken at Collingswood were given to the agents with the defendant's consent. Our examination of the record satisfies us that the district court did not err in denying the motion to suppress the evidence in question.

We have considered the other contentions made by defendant but find them so lacking in merit as to require no discussion.

The judgment of the district court will be affirmed.