**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herman GORDON, Defendant-Appellant.
No. 27455.**

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1970.

Rehearing Denied Feb. 18, 1970.

Lawrence E. Hoffman, Hoffman & St. Jean, Miami Beach, Fla., for appellant.

William A. Meadows, Jr., U. S. Atty., Donald I. Bierman, Neal R. Sonnett, Theodore Klein, Asst. U. S. Attys., Miami, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal deals primarily with the validity of a search of the apartment of the appellant which produced evidence in the nature of a large quantity of jewelry, which subsequently formed the basis of appellant's conviction under Title 18 U.S.C.A. § 659 and § 2315 being in possession and receiving stolen jewelry while moving in foreign or interstate commerce.

■ The most important issue arises from the contention made by the appellant that the search warrant which permitted access by the federal agents to Gordon's apartment was obtained following a viewing of suspected stolen property in the apartment after a federal agent, Yablonsky, obtained admission by a ruse. Appellant contends that, although he knew Yablonsky and knew that he was an FBI agent, he had not been too anxious to see him and that Yablonsky phoned him from downstairs and asked to see him, but that when appellant said that he had nothing to see him about, Yablonsky mentioned the possibility of a criminal prosecution, which might be resolved if he could be permitted to talk to Gordon. Appellant's statement of the case is that thereupon he consented to talk to Yablonsky, who then came to the apartment and sat around and talked for two hours, during which time he observed two unusual type metal cups, the presence of which subsequently led to the obtaining of a search warrant by Yablonsky.

Yablonsky's testimony, to the contrary, was that no ruse was employed by him. His story was that he was a member of the jewel theft squad of the Miami office, and was concerned with the activities of the defendant with reference to the possibility of defendant furnishing him information pertaining to jewel thefts. During the first week of March, 1968, two flight manifests were shown to Yablonsky and he was asked if the name Herman Gordon, which appeared on the manifest, was the same Herman Gordon that he knew. Not being certain as to whether they were one and the same, on March 14, 1968, he visited Herman Gordon at his apartment to ascertain the facts as to this matter. His testimony was that upon arriving in the lobby of the defendant's apartment, he telephoned and asked if he might come up and speak with him. He states that Gordon invited him up to his apartment and admitted him. Yablonsky then established the fact that the same Herman Gordon is the person whose name appeared on the manifest. Thereafter he remained in the apartment for approximately two hours, engaged in conversation as to his exploits of the past. He then departed about 12:30 P.M.

Since this matter was critical to the judgment of the trial court as to the validity of the search warrants, we stop at this point to state that much evidence is introduced dealing with this matter. However, appellant incorrectly states the record when, in his brief, he says that "defendant, his wife and a visitor testified that Yablonsky told him on the telephone that he had a paper which could lead to defendant's arrest if it was not explained," citing the Appendix 127, 161–2, 180, 183, 238. We have carefully read these references to the record and find only Gordon's testimony that Yablonsky told him about such a paper. Obviously, no other person, either his wife or a visitor, could testify to what Yablonsky told Gordon on the telephone. Thus, we have solely the credibility of agent Yablonsky and the credibility of Gordon upon which the trial court could base his determination as to the truth of the essential fact touching on the voluntariness of Yablonsky's original entry into the apartment. The trial

court credited the agent. And, in light of all of the evidence produced in connection with the motion to suppress, well he might. We conclude that there was ample evidence upon which the trial court could find that Yablonsky was legally present in Gordon's apartment at the time when he observed the two cups.

Upon returning to his office Yablonsky examined photographs of items allegedly stolen within the last year from John F. Kennedy Airport in New York. He thereupon prepared an affidavit for a search warrant in which he described the shipment of 187 pieces of "Greek jewelry" stolen from the airport, stating that each piece was marked with either 18K or 22K, plus trademark Z or Zolotas.

He described the cups as appearing to be purple in color and stated that, upon reviewing photographs he "believed" the cups identical to the cups "stolen." [1]

Based on this affidavit, the magistrate issued a search warrant in which he recited the statement made in the affidavit, and then said: "As I am satisfied that there is probable cause to believe that the property so described is being concealed on the premises above described, and that the foregoing grounds for application for issuance of the search warrant exist; you are hereby commanded to search forthwith, etc."

■ The first attack made by the appellant is that the search warrant was based on a conclusionary statement

---

1. The affidavit upon which the warrant was issued was as follows:

"The undersigned, being duly sworn deposes and says: That he has reason to believe that on the premises known as The Kennedy House, Apartment 2-A, 1865 79th Street Causeway, North Bay Village, Dade County, Florida, in the Southern District of Florida, there is now being concealed certain property, or a portion thereof, which was contained in a light-colored quarter-inch plywood container, 15″ x 15″ x 10″, weighing approximately 47½ pounds, bearing the names of "Tresor" S. Papastanos and Company, Athens, Greece, and Elias Lalaounis, c/o Greek Fashions, Inc., 15 East 46th Street, New York, New York. The box contained 187 pieces of 17-carat and 22-carat gold men's and women's jewelry, consisting of rings, crosses, cups, earrings, cuff links, bracelets, and necklaces, some of which contain diamonds, rubies, pearls, emeralds and/or sapphires. Each piece is marked with either 18K or 22K plus trademark "Z" or Zolotas, which was stolen at the John F. Kennedy Airport, New York, New York, between January 12 and January 15, 1968, while moving in foreign commerce between "Tresor" S. Papastanou and Company, Athens, Greece, and Elias Lalaounis, c/o Greek Fashions, Inc., 15 East 46th Street, New York, New York, and valued at approximately $37,000 in violation of Title 18, Section 659, United States Code.

And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: On March 14, 1968, between the approximate hours of 10:00 a. m. and 12:30 p. m., while on official business I had the occasion to interview Herman Gordon, who resides at Apartment 2-H, 1865 79th Street Causeway, North Bay Village, Florida, concerning air travel to the Dominican Republic from Miami, Florida, on February 25, 1968 and a return passage on February 26, 1968. During the course of this interview I observed on the top of an end table adjacent to a telephone in the living room of the apartment, a small cup which appeared to be purple in color on a gold filigree stand approximately three and a half to four inches in height, and in a French Provincial breakfront located on the north wall of the living room, I observed a similar type cup. These cups appeared familiar to me at this time and later, when I had left the apartment, I recalled that another agent of the Miami office of the F.B.I. had shown to me several photographs of jewelry consisting of crosses, bracelets, cups, rings, and other items which had been stolen from foreign commerce at the John F. Kennedy Airport, New York, New York, in January, 1968. I again reviewed these photographs and believe the cups I observed in Apartment 2-H, Kennedy House, North Bay Village, Florida, on March 14, 1968, are identical to the cups which were stolen at John F. Kennedy Airport, New York, New York, on January 12–15, 1968.

/s/ JOSEPH YABLONSKY
Special Agent
Federal Bureau of Investigation

rather than on a statement of facts. We find no substance in this contention whatever. The fact that the agent said that he "believed" that the cups he saw in Gordon's apartment were the identical cups of which he had seen a picture would be no more a conclusion than if the agent had actually seen the cups themselves and then swore that he believed the cups he saw in the Gordon apartment were the same cups. He could never identify them beyond what he actually "believed." His belief was based on observation and was adequate to establish reasonable cause. As stated in United States v. Saka, 3 Cir., 1964, 339 F.2d 541, "If an officer sees the fruits of a crime, *or what he has good reason to believe to be the fruits of a crime*, freely lying upon a suspect's property, the officer is not required to look the other way or to disregard the evidence, merely because he is not armed with a search warrant." (Emphasis added.) We find nothing in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L. Ed.2d 1503, that requires a different conclusion here. The court was there concerned with the fact that the affidavit of the officer did not indicate any source for his belief, and that it did not set forth any sufficient basis upon which a finding of probable cause could be made by the magistrate. Here, the affidavit gave ample cause upon which the magistrate could base his determination of the existence of probable cause.

■ We next turn to the basic attack upon the search warrant on the theory that the information upon which it was obtained was learned by the FBI agent by gaining entrance to Gordon's apartment by a ruse. We agree with the trial court that, although much of the jewelry which was the subject of proof during the trial was discovered after a later search warrant was issued, its seizure for evidentiary purposes must be justified, if at all, upon the search warrant which we have heretofore discussed.

The trial court found that entrance was gained legally by agent Yablonsky. Appellant contends that what Yablonsky saw while present in Gordon's apartment for two hours or more could not be used as the basis for obtaining a search warrant, because in effect the mere observation of these items amounted in itself to an illegal search. As to this proposition, our court has said: "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 5 Cir., 1957, 240 F.2d 533, 535, and in Agius v. United States, 5 Cir., 1969, 413 F.2d 915, this court stated: "The finding below that appellant voluntarily went to the car and exposed its contents, and that the agents observed the gun, is adequately supported by the testimony. It is clear that items in plain view of law enforcement officers are not discovered as a result of a search." See also United States v. Saka, supra, and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, 1963.

Upon executing a search warrant, special agent Yablonsky and four other agents waited approximately 25 minutes for the arrival of defendant's attorney, and because Mr. Gordon was not present personally, they waited at the request of his wife for this period of time. After this delay they seized the two cups, but then went ahead with the search before Gordon returned at approximately two p. m. At this time defendant requested the agents leave without examining the contents of a locked closet. In light of the fact that the warrant referred to a shipment containing 187 pieces, the agents continued the search and caused the closet to be opened, which revealed suitcases piled one on top of another, and items ·of jewelry lying on the floor. After a cursory examination of the contents of the suitcases, agent Yablonsky decided to obtain a second search warrant, which he did. Others went out to obtain packing material for the items found in the closet, while others remained in the apartment.

After the second warrant was executed and a partial inventory was prepared of the contents of the suitcases, listing 22 pieces of jewelry as being part of the shipment of 187 pieces described in the original warrant, the inventory was not completed until a later date in accordance with agreement between defendant's attorney and the agents, on account of the lateness of the hour, and the large quantity of jewelry to be inventoried. Nevertheless, the jewelry was all seized. The appellant was not arrested at any time during the day. Subsequently an indictment was returned charging him in four counts; count one charged defendant with possession of the pieces that were actually a part of the 187-piece shipment allegedly stolen from John F. Kennedy Airport; counts two, three and four charged the defendant with possession or receiving stolen jewelry while moving in foreign commerce, all of which items were discovered by the search, but were not part of the shipment mentioned in the search warrant.

■ Appellant's motion to suppress is further based on the contention that on the search warrant relating to the 187-piece shipment, it was improper for the search to continue until the other items, which were the subject of his convictions, were later discovered. The simple answer to this is that the great mass of jewelry found hidden in Gordon's apartment behind a locked door under circumstances which included the fact that Gordon was not in the jewelry business and had already been apparently found in possession of the identifiable stolen articles from the 187-piece shipment warranted the seizure by the agents of the remaining jewelry pending investigation as to their source. This issue becomes significant because, for failure of the attendance by an important witness to support the charges under the first count of the indictment, dealing with the Kennedy Airport theft, the trial court dismissed this count of the indictment, leaving pending the three counts which dealt with the other jewelry.

■■ The evidence at the trial was fully sufficient to warrant the jury's finding that all of the jewelry mentioned in the remaining three counts was stolen and in transit, and we conclude that the trial court did not incorrectly charge the jury that Gordon's possession of "recently stolen" jewelry permitted the inference of knowledge on his part. We conclude that in light of the nature of the articles, and the inherent difficulties in disposing of stolen property of this character, including a large number of new watch movements, the term "recently stolen" is a relative term. We find that it was not error for the trial court to use it in its charge to the jury under these circumstances.

■ Appellant contends that there was no evidence to support the conviction on Count 4, in that the two rings mentioned in that count were merely gold mountings worth only several hundred dollars or less. At the time they were stolen they had diamonds in them, and the proof showed they were worth in excess of $5,000 (the value required to be shown to bring the case within federal jurisdiction). While the government contends that property "received, concealed [or] stored" by a person other than the owner under circumstances otherwise showing illegal possession "must be evaluated at the time and place where it was stolen," Tippett v. United States, 4 Cir., 1965, 353 F.2d 335, we think that principle does not apply here. The record here contains specific testimony of a third party that Gordon acquired these two mountings without the diamonds approximately a week before he was arrested. This destroys any inference that might otherwise be drawn by the jury that the rings were at some time "received," "concealed," or "stored" in the same condition as when they were stolen.

We conclude, therefore, that the conviction on Count 4 cannot stand. However, since the other concurrent valid sentences were imposed the total time to be served is not affected. See Benton v.

Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; White v. United States, 5 Cir., 1969, 419 F.2d 374, November 24, 1969.

We have carefully considered each ground of the appeal, whether fully discussed here or not, and find that they are without merit. We conclude that the legality of agent Yablonsky's presence in Gordon's apartment when he observed the cups was an issue of credibility and the resolution of this issue by the trial court cannot be held to be clearly erroneous. It follows from that that Yablonsky's affidavit upon which the search warrant was issued was fully adequate, and the search pursuant thereto did not exceed the requirements established with respect to searches under the Fourth Amendment limitations. We further conclude that the trial court did not err in charging the principle of possession of recently stolen property, but that error resulted from the admission in evidence of the testimony concerning the value of the rings shipped from Rich's store in Atlanta at the time they were stolen, as distinguished from the condition of the rings at the time they were found as a result of the search.

The judgment is affirmed as to the first three counts, and reversed as to Count 4.