**SEVILLE INDUSTRIAL MACHINERY CORP., Plaintiff,**

v.

**SOUTHMOST MACHINERY CORP., Tri-State Machinery Corp., Norman Gellman, individually and doing business as Southmost Machinery Corp., and Tri-State Machinery Corp., and Paolo Alfieri, individually and doing business as Southmost Machinery Corp., Defendants.**

Civ. A. No. 83–149.

United States District Court,
D. New Jersey.

July 8, 1983.

Wilentz, Goldman & Spitzer by Frank M. Ciuffani, Woodbridge, N.J., for plaintiff.

Greenbaum, Greenbaum, Rowe & Smith by Michael B. Himmel, Alain Leibman, Newark, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Seville Industrial Machinery Corporation, instituted this action against defendants, Southmost Machinery Corporation ("Southmost"), Tri-State Machinery Corporation ("Tri-State"), Norman Gellman ("Gellman"), an officer of Southmost and Tri-State, and Paolo Alfieri ("Alfieri"), an officer of Southmost. Plaintiff alleges violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.,* fraud, breach of contract, and conversion. Jurisdiction is asserted under 18 U.S.C. § 1964 and under the principles of pendent jurisdiction.

Defendants, Southmost, Tri-State and Gellman moved for dismissal of the complaint under Fed.R.Civ.P. 9(b), 12(b)(1), and 12(b)(6) and for lack of pendent jurisdiction, or, in the alternative, moved for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Alfieri has not been served with the summons and complaint.

In order for defendants to succeed on their motion to dismiss, they must demonstrate "beyond a doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957);

*Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). In meeting their burden, the defendants must accept as true the allegations set forth in plaintiff's complaint. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Hochman v. Board of Education of the City of Newark,* 534 F.2d 1094, 1097 n. 1 (3d Cir.1976).

It is necessary to examine the elements of a RICO violation to determine whether plaintiff has alleged a set of facts which, if proved at trial, would entitle it to relief. General pleading rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8. Fed.R. Civ.P. 9(b) requires that all circumstances constituting fraud be stated with particularity.

The First Count of the complaint sets forth the facts upon which plaintiff relies for the RICO claim. Plaintiff, it is asserted, was the owner of certain industrial machinery listed in Exhibits A through F of the complaint. It is further asserted that Southmost and Tri-State, acting through their controlling persons Gellman and Alfieri, by means of fraudulent and misleading information induced plaintiff to sell or transfer possession of plaintiff's machinery to defendants for resale. It was represented that an agreed upon portion of the proceeds would be paid to plaintiff. It is claimed that defendants misrepresented the true ownership of the machinery to the persons to whom they sold it. Further, the complaint alleges that defendants persuaded plaintiff to enter into a joint venture with them to purchase equipment on the representation that the pro rata share of the costs of acquisition of the equipment along with the resulting profits from resale would be distributed and paid back to Seville. Finally, it is alleged that Gellman defrauded plaintiff by falsely representing that he was a business partner of plaintiff and thereby receiving a payment which

should have been paid by a third party to plaintiff. According to the complaint, defendants have retained for their own use the money which they have received from these dealings instead of paying it over to plaintiff.[1]

The civil remedies section of RICO, 18 U.S.C. § 1964(c), provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue ... [in federal court] ... and shall recover threefold the damages he sustains and the cost of the suit including a reasonable attorney's fee.

The actions which RICO declares to be unlawful are enumerated in Section 1962 of the statute, all of which relate to the interaction between an "enterprise" affecting interstate or foreign commerce and a "pattern of racketeering activity." In its complaint, plaintiff charges violations of 18 U.S.C. §§ 1962(b), (c) and (d) by defendants as the basis of its recovery of damages under § 1964(c).

Section 1962(b) makes it unlawful for any person "to acquire or maintain an interest or control of any enterprise" through "a pattern of racketeering or through collection of an unlawful debt." 18 U.S.C. § 1962(b).

Section 1962(c) makes it unlawful for any person associated with an "enterprise" which affects interstate or foreign commerce to conduct or participate in the affairs of such enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962(c).

Section 1962(d) simply states that it is unlawful for any person to conspire to violate any of the substantive provisions of Section 1962.

Defendants Southmost, Tri-State and Gellman seek dismissal of plaintiff's RICO claim stating that plaintiff fails to plead properly: (1) the existence of an enterprise

---

1. The other counts of the complaint allege various common law causes of action arising out of the same conduct which is claimed to give rise to the RICO count.

distinct from defendants, (2) a causal link between any pattern of racketeering activity and plaintiff's injury, and (3) a conspiracy to violate RICO. Defendants further state that the First Count of the complaint merely states a claim for common law fraud and that plaintiff should not be permitted to disguise its fraud claim as a RICO cause of action in order to avail itself of RICO's treble damages provision.

■ Proper pleading of substantive RICO violations such as those charged by plaintiff requires the averment of the existence of an "enterprise" which affects interstate or foreign commerce and the defendants' participation in the enterprise and in a "pattern of racketeering activity." 18 U.S.C. § 1962(b), (c), and (d). *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

## A. *Existence of an Enterprise*

"Enterprise", according to the statute, "includes any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

It is clear that a legitimate business entity, such as a corporation, may constitute an "enterprise." *United States v. Brown,* 583 F.2d 659, 663 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court held that even a completely illegal organization may be an enterprise for RICO purposes. *Id.* at 583, 101 S.Ct. at 2528. The Court in *Turkette* set forth the elements necessary to establish the existence of such an enterprise: "evidence that the various associates function as a continuing unit" for a common purpose. *Id.* at 583, 101 S.Ct. at 2528. In addition, the enterprise must be shown to have an existence "separate and apart from the pattern of activity in which it engaged." *Id.* at 583, 101 S.Ct. at 2529.

The Third Circuit recently analyzed *Turkette* in *United States v. Riccobene,* 709 F.2d 214 (1983). The language of that opinion, read in conjunction with the facts of the case, throw considerable light upon what must be alleged and proved in order to find the evidence of an enterprise for RICO purposes.

In *Riccobene* the government charged that during the period 1972 to 1978 there existed an ongoing criminal enterprise implicating each of the defendants and that the enterprise engaged in illegal gambling, mail fraud, wire fraud, extortionate credit transactions and collection of unlawful debts. The evidence at the trial established the existence of an enterprise headed by Angelo Bruno and staffed by a number of other individuals with varying degrees of authority and differing responsibilities within the organization. The organization used different groupings of its members to engage in a number of discrete illegal activities referred to in the RICO Act. The Court concluded that the evidence was sufficient to demonstrate that an organization existed which satisfied the requirements for an enterprise and that all the members of the conspiracy knowingly agreed to participate in or conduct the enterprise through a pattern of racketeering.

### (1) *Ongoing Organization*

■ The Third Circuit held that the first requirement of an "ongoing organization" is a showing that a structure exists for group decision making, whether it be hierarchial or consensual. *Id.* at 222. The Court stated that some mechanism must exist to control and direct group affairs on an ongoing rather than ad hoc basis. *Id.* at 222.

Plaintiff's allegations in Count One of its complaint are insufficient to aver an "ongoing organization" for several reasons. First, plaintiff merely asserts that "defendants Southmost, Tri-State, Gellman and Alfieri are enterprises" (complaint, First Count, ¶ 17) without clarifying whether all

four defendants comprise one enterprise or whether each defendant constitutes an "enterprise."

Plaintiff, however, could not logically allege violations of 18 U.S.C. § 1962(b) and (c) by a single-person enterprise. For example, a defendant can violate Section 1962 only by acquiring or maintaining an interest in or control of the enterprise. 18 U.S.C. § 1962(b). It would be absurd for plaintiff to attempt to prove by a preponderance of the evidence that Mr. Gellman or Mr. Alfieri acquired or maintained an interest in themselves. Similarly, a violation of Section 1962 occurs only when a person is employed by or associated with an enterprise. A corporation such as Southmost and Tri-State could not employ itself or associate with itself. *See* Tarlow, *RICO Revisited,* 17 Georgia Law Review 291, 344–345 (1983).

Nor does plaintiff properly allege that all four defendants comprise one enterprise. For instance, plaintiff does not provide so much as a clue describing how Southmost, a corporation whose principal place of business is located in Texas, its officer, Mr. Alfieri, a Texas resident, belonged to an "ongoing organization" with Tri-State, a New Jersey corporation and its officer, Mr. Gellman, who plaintiff alleges is an officer of both Southmost and Tri-State and who is also a New Jersey citizen. Aside from assertions that the four defendants conspired with each other and committed numerous fraudulent acts, plaintiff does not mention any identifiable structure which would encompass all four defendants. Nor does plaintiff detail the roles each defendant played in the "enterprise" or explain any interrelationship between the four defendants.

Furthermore, it is not clear that the term "enterprise" can be construed to embrace two corporations and two individuals who allegedly conspired to violate predicate offenses of RICO. Section 1961(4) contains two conjunctive phrases to define the term "enterprise." The first phrase describes legal entities: "any individual, partnership, corporation, association or other legal entity. . . ." The second phrase refers to non-legal entities: "any union or group of individuals associated in fact although not a legal entity." Since the complaint as pleaded does not allege that the combined entity of two corporations and two individuals operate as a legal entity, the "enterprise" named by plaintiff must fall within the second category of "associated individuals." Since the combined entity is not a union and is not "associated individuals," it does not come within the definition of "enterprise."

Plaintiff attempts to allege that defendants Southmost, Tri-State, Gellman and Alfieri associated with each other in fact by conspiring to commit mail fraud and wire fraud in connection with the title, purchase, shipment, and sale of Seville's industrial machinery.

■ However, this allegation of conspiracy cannot be sufficient to allege an "enterprise" for RICO purposes. Congress specifically provided in Section 1962(d) of RICO that a conspiracy to violate the substantive RICO offenses is itself a violation of RICO. 28 U.S.C. § 1962(d). This indicates that Congress intended to establish a separate conspiracy offense in subsection (d) distinct from the offenses described in subsection (a), (b) or (c).

As the Eighth Circuit stated in *United States v. Anderson,* 626 F.2d 1358, 1369 (8th Cir.1980):

> [I]f a single . . . conspiracy to commit the predicate crimes were to fulfill the "enterprise" element of section 1962(c) violation, then a conspiracy to commit a 1962 violation would be defined as when a person, associated with a conspiracy to commit criminal acts, conspires to conduct those criminal acts. The awkwardness and duplication inherent in the structure of this articulation of the offense should be sufficient to suggest that we search for an alternative interpretation.

■ Plaintiff's interpretation of the enterprise requirement of Section 1962 of RICO would transform an allegation of a conspiracy into an allegation of an enterprise. I do not believe that the statutory scheme of RICO encompasses such an expansion of federal conspiracy law. If it were to be determined that an "enterprise" is sufficiently pleaded whenever a plaintiff avers that any two or more otherwise unassociated individuals agree to commit two or more acts of business fraud, this would effectively eliminate the enterprise element of RICO and drastically expand federal jurisdiction over all business torts which involve use of the mails or telephones. I conclude that this was not the Congressional intent in its enactment of the civil provisions of RICO. *See United States v. Bledsoe,* 674 F.2d 647, 661–662 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Anderson, supra.*

In *United States v. Bledsoe, supra,* the Eighth Circuit held that a group of agricultural cooperatives and corporations could not constitute an enterprise under RICO. The Court rejected the government's contention that "any confederation, no matter how loose or temporary" can be an "enterprise." Rather, the Court construed RICO as requiring "some structure separate from the racketeering activity and distinct from the organization which is a necessary incident to the racketeering." *Id.* at 664.

In *United States v. Anderson, supra,* the Eighth Circuit also rejected the government's attempt to characterize the association of two county administrators as an enterprise. The Court held that Congress intended that the phrase "a group of individuals associated in fact although not a legal entity" as used in Section 1961(4) to encompass only "an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the ... pattern of racketeering activity." *Id.* at 1372.

In the instant case, plaintiff has not alleged the existence of an "ascertainable structure" distinct from the alleged racketeering activity. In fact, defendant Alfieri is only alleged to be an officer and controlling person of defendant Southmost and is not alleged to have any connection with defendant Tri-State. Moreover, plaintiff alleges that defendant Gellman defrauded plaintiff through his misrepresentations made to one of plaintiff's customers. (Complaint, First Count, ¶¶ 18, 19). There is no allegation that Gellman's alleged misrepresentation was part of a larger racketeering scheme.

For all the above reasons, I find that the First Count of plaintiff's complaint is deficient since it fails to allege the existence of an "ongoing organization" which is the first element of the RICO "enterprise" requirement.

(2) *Continuing Unit for Common Purpose*

■ Not only does plaintiff fail to allege an ongoing organization, but it also fails to plead the second necessary element of an enterprise under RICO, namely, that "the various associates function as a continuing unit" for a common purpose. *United States v. Turkette, supra,* 452 U.S. at 583, 101 S.Ct. at 2528.

At no point in its complaint does plaintiff allege what "common purpose" characterized defendants' enterprise. Plaintiff fails to refer to any purpose behind any enterprise, whether that enterprise consists of all four defendants operating collectively or whether each defendant comprises its own enterprise. Nor does plaintiff sufficiently allege the existence of a "continuing unit." The Third Circuit in *United States v. Riccobene, supra,* held that the participants in the enterprise occupy continuing positions in the group. The Court explained that each person must perform a role in the group which is consistent with the enterprise's organizational structure and which furthers the activities of the organization. *Id.* at 223.

The First Count of plaintiff's complaint is deficient in this respect as well since it

neither specifies the positions that existed in each separate enterprise or in the collective enterprise. Nor does plaintiff allege the individual roles that each of the defendants played within the enterprise. Plaintiff merely alleges that from May 1981 to the date of the complaint, the defendants conspired to defraud plaintiff in connection with the title, purchase, shipment, and sale of plaintiff's industrial machinery. (Complaint, First Count, ¶ 18). In furtherance of this conspiracy, plaintiff lists, without providing specific dates or instances, a number of fraudulent acts that defendants allegedly committed or caused to be committed. (Complaint, First Count, ¶ 11). With the exception of paragraph 18, plaintiff fails to allege whether the defendants operated collectively or on their own initiative. This is simply not sufficient to aver a "continuing unit functioning for a common purpose."

### (3) *Separation between Enterprise and Racketeering Activity*

■ The third and final element in establishing the enterprise is that the organization must be "an entity separate and apart from the pattern of activity in which it engaged." *United States v. Turkette, supra,* 452 U.S. at 583, 101 S.Ct. at 2529. As the Third Circuit interprets this third requirement, it is necessary for the plaintiff to show that the enterprise has an existence beyond that which is necessary merely to commit the alleged predicate racketeering offenses. *United States v. Riccobene, supra,* at 223–224.

I cannot find that plaintiff alleges an enterprise separate and apart from the alleged predicate offenses. As mentioned earlier, it is unclear whether plaintiff even alleges the existence of one or four enterprises. The complaint simply does not provide any clear delineation of the scope or activities of the enterprise. In fact, the alleged "enterprise" involving Southmost, Tri-State, Gellman, and Alfieri only can be understood in terms of the fraudulent acts that plaintiff claims the defendants committed. (Complaint, First Count, ¶¶ 10–24).

I find that the First Count of plaintiff's complaint fails to satisfy the separate existence requirement since it pleads the existence of an "enterprise" which is apparently synonymous with the defendants' alleged "pattern of racketeering activity."

### (4) *Separation between Enterprise and Racketeers*

A further "separation" problem exists in plaintiff's complaint. Plaintiff alleges that defendants are both the "enterprise" and the racketeers operating the enterprise. Some courts have concluded that such an allegation is inconsistent with RICO.

Sections 1962(b) and (c) require the allegation of two entities:

(1) a "person" who either acquires or controls an enterprise pursuant to subsection (b) or who is employed by or associated with an enterprise pursuant to subsection (c), and

(2) an "enterprise" through which that person engaged in a pattern of racketeering activity. *See* 18 U.S.C. § 1962.

Under Section 1962, it is unlawful for the *person* to participate in the affairs of the enterprise through racketeering activity. RICO, however, does not hold the infiltrated *enterprise* itself liable. *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir.1982); *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill.1982); *Bays v. Hunter Savings Assoc.,* 539 F.Supp. 1020, 1023–24 (S.D.Oh.1982); *Van Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125, 1136 (D.Mass.1982).

It would be a distortion of the statute, so the argument goes, to allow the four defendants to assume both the identity of an infiltrated enterprise and of racketeering persons. *United States v. Computer Sciences Corp., supra,* at 1190; *Bennett v. Berg, supra,* at 1061; *Parnes v. Heinold Commodities, Inc., supra,* at 23–24; *Bays v.*

*Hunter Savings Assoc., supra,* at 1023–24; *Van Schaick v. Church of Scientology of Cal., Inc., supra,* at 1136. Such a rule would permit "a defendant [to] conspire with his right arm, ... hold[ ] and fire[ ] the fatal weapon" into itself. *United States v. Computer Sciences Corp., supra,* at 1190.

I am not sure that this fourth requirement to establish an enterprise has been adopted in this Circuit. Two unreported decisions in this district note with apparent approval *United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), citing it for the proposition that defendants in a criminal RICO case may be both the "persons" and the "enterprises" in question. *Mooney v. Fidelity Union Bank,* Docket No. 82–3192, 3193 (March 22, 1983) (Ackerman, J.); *Coastal Steel Corporation v. Chemical Bank,* Docket No. 82–1714 (Oct. 27, 1982) (Thompson, J.) Slip Op. at 14. In *Riccobene, supra,* the Court recited *three* elements of an enterprise: (i) an ongoing organization, (ii) functioning of the associates as a continuing unit and (iii) the existence of the enterprise separate and apart from the pattern of activity in which it engages. The Court referred to the latter criterion as "the third and *final* element in establishing the enterprise." at 223 (emphasis added). Taken literally, that characterization suggests that there is no fourth element of an enterprise, that is, a separate identity between the enterprise and the racketeers.

It is unnecessary to reach this question, however. Whether the complaint alleges that the four defendants individually constitute the enterprise or whether it alleges the defendants collectively constitute the enterprise, it fails to allege the three elements identified by the Supreme Court in *Turkette* and by the Third Circuit in *Riccobene* as necessary to establish an enterprise.

■ The First Count of plaintiff's complaint must be dismissed because the proper pleading of an "enterprise" as defined in 18 U.S.C. § 1961(4) is essential to prove a violation of any of the subsections of 18 U.S.C. § 1962 and to recover treble damages, attorney's fees, and costs pursuant to 18 U.S.C. § 1964.

**B. Conspiracy Claim**

Plaintiff also alleges in its First Count that defendants violated Section 1962(d), the conspiracy subsection of RICO. This section provides:

[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(d).

As discussed above, plaintiff fails to properly allege a violation of either Section 1962(b) or (c). However, even if these pleading deficiencies were corrected, plaintiff still does not properly allege a conspiracy cause of action against defendants.

■ A conspiracy to violate RICO is comprised of three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise; and (3) an overt act, which need not be a crime, in furtherance of the conspiracy. *United States v. Sutherland,* 656 F.2d 1181 n. 4, and 1193 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982).

The Third Circuit analyzed these elements of a RICO conspiracy in *United States v. Riccobene, supra.* The Court stated that an agreement merely to commit the predicate offenses would not be sufficient to support a RICO conspiracy. Nor is it sufficient if the defendants merely participated in the same enterprise. *Id.* at 224. The Third Circuit explained that this is so because, under RICO, it is an agreement *to assist the enterprise's* involvement in corrupt endeavors that is prohibited, not an agreement to commit a pattern of racketeering alone. *Id.* at 224. A plaintiff must show that the defendants "understood the

scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." *Id.* at 225.

■ In the instant case, plaintiff's complaint does not even describe the scope of the "enterprise" much less allege that the defendants had knowledge of the enterprise's scope and knowingly conspired to further the enterprise through their racketeering activity. Although plaintiff does allege that defendants conspired to commit mail fraud and wire fraud, plaintiff fails to allege a RICO conspiracy since it does not state that defendants made their agreement in order to further the affairs of a RICO "enterprise."

Therefore, the First Count of plaintiff's complaint fails to allege that defendants violated Section 1962(d), the conspiracy subsection of RICO. 18 U.S.C. § 1962(d). This is a further ground for dismissal.

C. *Pattern of Racketeering*

In order to allege a RICO cause of action, plaintiff must show not only that defendants participated in the operation of an enterprise but also that they did so "through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(b) and (c). RICO defines "pattern of racketeering activity" as:

> at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5).

(1) *Commission of Two or More Predicate Crimes*

"Racketeering activity" in 18 U.S.C. § 1961(1) is defined by incorporating specifically enumerated state and federal offenses including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and interstate transportation of stolen property (18 U.S.C. §§ 2314, 2315). It appears from the definition of "pattern of racketeering

activity" that any combination of two listed offenses may constitute a "pattern" for RICO purposes.

In its complaint, plaintiff alleges that between May 1981 and the date of the complaint, defendants used the telephone, the mail, and other facilities of interstate commerce, to knowingly provide plaintiff with false and misleading information to induce plaintiff to enter into purchase, consignment, joint venture and service contracts with defendants in connection with its industrial machinery. (Complaint, First Count, ¶ 11A). Plaintiff further alleges that since May 1981 defendants have transported and sold or caused to be transported and sold in interstate commerce, the industrial machinery fraudulently obtained from plaintiff. (Complaint, First Count, ¶ 11G). Plaintiff claims that the acts of defendants constitute federal mail fraud, 18 U.S.C. § 1341, federal wire fraud, 18 U.S.C. § 1343, and interstate transportation of stolen property, 18 U.S.C. §§ 2314, 2315.

■ The elements of an indictable offense under the federal mail and wire fraud statutes are: (1) a scheme designed to defraud or to obtain money or property by false pretenses and (2) use of the mails or interstate wires (including interstate telephone calls) in furtherance of the fraudulent scheme. Specific intent to defraud must be pleaded and proved. *See, e.g., United States v. Giovengo,* 637 F.2d 941, 945 (3d Cir.1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 228 (1981); *United States v. Von Barta,* 635 F.2d 999, 1006 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

■ I find that plaintiff does plead that defendants used the United States mails and interstate means of communications "in furtherance" of their scheme. Plaintiff need not allege that defendants personally mailed or used interstate wires. Nor is it essential to establish that the use of mails or interstate wires was required for carrying out the scheme. *See Pereira v. United*

*States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

Moreover, plaintiff does allege that at least two predicate acts of mail fraud or wire fraud occurred. (Complaint, First Count, ¶ 11). Furthermore, since all of defendants' actions allegedly occurred after May 1981, plaintiff properly alleges that the last predicate racketeering act took place within ten years after the commission of a prior act of racketeering.

■ However, defendants correctly state that Fed.R.Civ.P. 9(b) requires that all circumstances constituting fraud be pleaded with particularity. Plaintiff fails to describe the date, place, or time of any phone calls or letters or other forms of interstate communication. Nor does the plaintiff's complaint set forth with even minimal particularity the details of the alleged fraud or misrepresentations.

I find that this lack of specificity caused plaintiff's allegations of mail fraud and wire fraud to be deficient.

Plaintiff also alleges that defendants fraudulently obtained, transported, and sold plaintiff's industrial machinery in violation of 18 U.S.C. §§ 2314, 2315.

In relevant part, 18 U.S.C. § 2314 prohibits a person from "transport[ing] in interstate or foreign commerce any goods ... of the value of $5,000 or more, knowing the same to be stolen, converted, or taken by fraud."

In pertinent part, 18 U.S.C. § 2315 prohibits a person from "receiv[ing], conceal[ing], ... sell[ing], or dispos[ing] of any goods ... of the value of $5,000 or more ... which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken."

■ Although it is not necessary that the transportation of property be an essential part of a specific fraud, *United States v. Sheridan,* 329 U.S. 379, 384–385, 67 S.Ct. 332, 334–335, 91 L.Ed. 359 (1946), plaintiff

must allege that defendants transported or caused to transport with unlawful and fraudulent intent and with knowledge that the property was fraudulently obtained. *See United States v. Saka,* 339 F.2d 541, 543 (3d Cir.1964). Moreover, it is an essential element of the charge of interstate transportation of stolen goods that the goods transported be worth $5,000 or more. *United States v. Weinberg,* 478 F.2d 1351, 1353 (3d Cir.1973).

■ In the instant case, plaintiff alleges that it has suffered business and property damages of $759,039. However, the complaint does not specify whether defendants transported or caused to transport over $5,000 worth of fraudulently obtained goods. Nor does plaintiff allege that defendants transported or caused to be transported these goods with knowledge that the property was fraudulently obtained.

Additionally, plaintiff fails to allege its interstate transportation claim with the particularity required by Fed.R.Civ.P. 9(b). Plaintiff lists no specific dates, places, or times to support its claim that defendants transported and sold fraudulently obtained goods. Nor does plaintiff's complaint set forth any details of the alleged fraud.

For the above reasons, I find plaintiff's allegations of interstate transportation of fraudulently obtained goods to be deficient.

The First Count of plaintiff's complaint will be dismissed because it fails to allege at least two acts of racketeering activity with sufficient particularity and thus fails to allege that defendants engaged in a "pattern of racketeering activity" as required by 18 U.S.C. § 1962.

(2) *Requirement of "Racketeering Injury"*

■ Defendants also urge dismissal of the First Count for failing to show a causal link between a "pattern of racketeering activity" and the injury. Defendants reason that Section 1964(c) permits treble dam-

age actions when an injury to business or property occurs "by reason of a violation of § 1962." 18 U.S.C. § 1964(c). Defendants point to a number of courts which restrictively construe this language to mean that the injury to plaintiff must be caused by the operation of an enterprise through a pattern of racketeering or a so-called "racketeering enterprise injury." By this, the court means an injury different from the harm which results to a plaintiff from violations of the underlying predicate offenses. *See, e.g., Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1360 (S.D.N.Y.1983); *Harper v. New Japan Securities International,* 545 F.Supp. 1002, 1007 (C.D.Cal.1982); *Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206, 208 (E.D.Mich.1981).

However, this judicially imposed requirement of a "racketeering enterprise injury" seems artificial and unwarranted by the language of the RICO statute. Moreover, a number of commentators have noted that application of the "racketeering injury" requirement could lead to the anomalous result of denying standing to persons concededly the direct victims of racketeering activity. Natan, *Civil RICO: A Primer on the Emerging Use and Abuse of an Elastic Treble Damage Remedy,* 3 ALI–ABA Civil Practice and Litigation in Federal and State Courts 1491, 1536–1537 (1983); Strafer, Massumi, Skolnick, *Civil RICO in the Public Interest: "Everybody's Darling."* 19 Am.Cr.L.Rev. 655, 706 (1982); *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L.Rev. 1101, 1109–1114 (1982).

Furthermore, most courts which have sustained civil RICO complaints have accorded standing to the direct victims of the predicate acts without any need for the additional element of a "racketeering enterprise injury." *See, e.g., Bennett v. Berg,* 685 F.2d 1053, 1058 (8th Cir.1981); *O'Connor v. Brown,* Docket No. 81–C–1475 (N.D. Ill. filed 1982); *Getterman v. Vitoulis,* Docket No. 82 Civ. 6985 (S.D.N.Y. April 30, 1982); *Meineke Discount Muffler Shops,*

*Inc. v. Noto,* 548 F.Supp. 352, 354 (E.D. N.Y.1982).

The argument that plaintiff fails to allege a "racketeering enterprise injury" is rejected. The First Count of the complaint clearly alleges that plaintiff suffered direct injury from defendants' alleged racketeering activity and will not be dismissed for its failure to allege a separate and distinct "racketeering injury."

### D. Scope of RICO

Defendants argue that plaintiff has disguised a simple business fraud cause of action as a RICO claim in order to avail itself of RICO's treble damages provision. Defendants maintain that Congress never intended RICO to reach business fraud, conversion, and contract claims such as alleged by plaintiff.

 It is clear that the civil provisions of RICO were not enacted for the purpose of imposing federal liability for state business fraud claims. The primary intent of Congress in enacting 18 U.S.C. § 1962 was to combat the infiltration of organized crime into legitimate businesses operating in interstate commerce. S.Rep. No. 91–617, 91st Cong., 1st Sess. 76 (1969); *United States v. Turkette,* 452 U.S. 576, 593, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981).

The civil provisions at issue in this case were not part of the RICO bill as originally introduced and passed by the Senate. S. 30, 91st Cong., 2d Sess., 116 Cong.Rec. 952–72 (1970). At the urging of the Department of Justice and the American Bar Association, the House Judiciary Committee added a private RICO cause of action patterned on Section 4 of the Clayton Act. S. 30, 91st Cong., 2d Sess., 116 Cong.Rec. 35, 295–96 (1970). The proposal did not generate debate. Proponents of the measure simply stated that the "anti-trust machinery" of the Clayton Act could be effectively utilized in the RICO context to root out organized crime that infiltrated into legitimate business. *See Organized Crime Control: Hearing for Subcommittee No. 5 of the House*

*Committee on Judiciary,* 91st Cong., 2d Sess., 157, 170–72, 294, 519–20 (1971).

Moreover, if Section 1964(c) were broadly construed, courts would be confronted with an avalanche of RICO civil damages actions. Since virtually all business transactions involve use of the mails or telephones and many business dealings involve the transportation of goods between state lines, the civil sections of RICO could federalize an enormous number of fraudulent business transactions.

However, the Supreme Court noted in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) that Congress was well aware in enacting RICO that it would "mov[e] large substantive areas formerly totally within the police power of the State into the Federal realm." *Id.* at 586, 101 S.Ct. at 2530. The court stated that Congress acted within its power in including state law crimes within the definition of "racketeering" and that courts are without authority to restrict the application of the statute. *Id.* at 587, 101 S.Ct. at 2530.

Furthermore, the terms of RICO expressly include mail fraud, wire fraud, and the transportation of stolen goods as predicate acts within the scope of RICO. 18 U.S.C. § 1961(1)(B).

The precise scope of RICO is a difficult determination and one that need not be reached in view of the deficiencies of plaintiff's complaint. A RICO cause of action has not been pleaded and probably cannot be pleaded in the circumstances set forth in the complaint.

Accordingly, defendants' motion to dismiss the First Count of the complaint will be granted.

E. *Pendent Claims*

Plaintiff also alleges a number of pendent state law claims, namely, fraud (Second Count), contract breach (Third Count), conversion (Fourth Count), and tort (Fifth Count).

Pendent jurisdiction is a discretionary doctrine which allows a party to try in one judicial proceeding all claims arising out of a "common nucleus of operative fact" where to do so would promote judicial economy and convenience. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, the power of a court to exercise pendent jurisdiction requires, at a minimum, a federal claim with sufficient substance to confer subject matter jurisdiction on the court. *Id.* at 725, 86 S.Ct. at 1138; *Tully v. Mott Supermarkets,* 540 F.2d 187, 196 (3d Cir.1976).

The Third Circuit Court has recently held that:

> If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances. . . .

*Lechtner v. Brownyard, d/b/a W.H.Y.P. Country Radio,* 679 F.2d 322 (3d Cir.1982), *citing Tully v. Mott Supermarkets, supra.* No such extraordinary circumstances exist in this case.

Upon dismissal of the First Count of the complaint no federal issues will remain. Therefore the pendent state claims will be dismissed as well. The parties are, of course, free to bring their state claims to the New Jersey state court for resolution in that forum.

The court will file its own order.