**Richard G. SAINE, Plaintiff,**

v.

**A.I.A., INC., an Idaho corporation, d/b/a Agriculture Insurance, Defendant and Third-Party Plaintiff,**

v.

**NATIONAL HEALTH INSURANCE COMPANY, a Texas corporation, Third-Party Defendant.**

**Civ. A. No. 83–K–1726.**

United States District Court, D. Colorado.

March 21, 1984.

David W. Stark and Ira M. Long, Jr., Roath & Brega, P.C., Denver, Colo., for plaintiff.

Russell P. Kramer and Mark A. Nadeau, Calkins, Kramer, Grimshaw & Harring, P.C., Denver, Colo., for defendant and third-party plaintiff.

Don Lively, Coghill & Goodspeed, P.C., Denver, Colo., Patrick F. McManemin, Newman, Shook & Newman, Dallas, Tex., for third-party defendant.

## ORDER DISMISSING CERTAIN COUNTERCLAIMS

KANE, District Judge.

This action was instituted by Richard Saine against A.I.A., Inc., to recover commissions allegedly due him for the sale of AIA insurance policies. AIA counter-

claimed and impleaded National Health Insurance Co. (NHI) who hired Saine after he left AIA. In its counterclaim and third-party complaint the defendant asserts claims (1) under the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) for fraud; (3) for unfair competition; (4) under the Lanham Act; (5) for interference with contractual relations; (6) for disparagement; and (7) for wrongful appropriation.

Saine, the plaintiff has moved to dismiss the first, second and fourth of these claims. NHI, the third-party defendant, has moved to dismiss the first, second and third of these claims. In addition, NHI argues that as it cannot be derivatively liable for any of AIA's potential liability to Saine, it is not a proper third-party defendant. Therefore, it moves to dismiss the third-party complaint in its entirety.

The counterclaim and third-party complaint allege that while Saine was still subject to an employment contract with AIA, he entered into negotiations with NHI, a competitor of AIA. These negotiations were allegedly in breach of his contract with AIA. Saine also allegedly recruited some of his co-employees at AIA to defect to NHI. AIA maintains that the NHI sales force disparaged AIA in part by making fraudulent representations as to AIA's financial stability and in part by impugning its business practices. This campaign was ostensibly directed at AIA policyholders. The counterclaim does not allege that Saine was one of the NHI representatives who conducted this campaign, or that Saine enabled the operation to occur by providing NHI with the names of the people contacted.

## I. THE RICO COUNTERCLAIM

### A. The Pattern of RICO

The civil remedies section of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 (RICO) provides for a private right of action for treble damages:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Section 1962(a) makes it unlawful to invest funds derived from a pattern of racketeering activity in an enterprise engaged in interstate commerce. Section 1962(b) prohibits the operation of or acquisition of an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for any person associated with an enterprise which affects interstate commerce to conduct or participate in the affairs of such enterprise through a pattern of racketeering activity. Section 1962(d) states that it is forbidden to conspire to violate any of the substantive provisions of section 1962.

"Racketeering activity" includes any offense involving wire fraud. 18 U.S.C. § 1961(1)(B). A "pattern" consists of two or more of these predicate acts within 10 years of each other. 18 U.S.C. § 1961(5).

### B. Pleading a Claim Under RICO—The Racketeering Claim Against Saine

The statutory pattern reveals eight elements that are critical to a RICO claim:

1) That the defendant
2) through the commission of two or more of the enumerated predicate acts
3) which constitute a "pattern"
4) of "racketeering activity"
5) directly or indirectly participates in the conduct of
6) an enterprise
7) the activities of which affect interstate or foreign commerce, and that
8) the plaintiff was injured in his business or property by reason of such conduct.

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga.1983).

■ In reviewing the sufficiency with which AIA pleads these elements, I apply F.R.Civ.P. 9(b) which requires that "the circumstances constituting fraud ... be stated with particularity." This Rule should clearly govern the pleading of a predicate offense if that offense involves fraud. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 19 (2d Cir.1983); *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982); *County of Cook v. Midcon Corp.,* 574 F.Supp. 902, 920 (N.D.Ill.1983); *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 356 (E.D.Mich.1983); *Windsor Associates, Inc. v. Greenfeld,* 564 F.Supp. 273, 279–80 (D.Md.1983); *Eaby v. Richmond,* 561 F.Supp. 131, 136 (E.D.Pa.1983); *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391, 397 (S.D.N.Y.1982).

■ To meet the Rule 9(b) standard a claimant must identify the circumstances constituting the fraud. This in turn involves identification of the particular defendants with whom the plaintiff dealt; designation of the occasions on which the fraudulent statements were made, and by whom; and designation of what misstatements or half-truths were made and how. *See Noland v. Gurley,* 566 F.Supp. 210, 216 (D.Colo.1983); *Trussell v. United Underwriters Ltd.,* 228 F.Supp. 757, 774 (D.Colo.1964).

■ The RICO counterclaim attempts to state three causes of action: one against each of NHI and Saine for conducting NHI's affairs through a pattern of racketeering activity, contrary to 18 U.S.C. § 1962(c); and one claim that NHI and Saine conspired to violate that section, contrary to § 1962(d). With respect to the § 1962(c) claim against Saine, I find that the predicate offense of wire fraud has been inadequately pleaded. The accusation of wire fraud is premised on the telephone calls to AIA policyholders in which false representations about AIA were allegedly made. Counterclaim ¶ 22–31. These calls were made by "NHI representatives." There is no allegation that Saine was one of these representatives or that he was responsible for the acts of these represent-atives. As one court has recently pointed out, a "[p]laintiff is under a Rule 9(b) obligation when dealing with more than one defendant to specify which defendant told which lie and under what circumstances." *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391, 394 (S.D.N.Y.1982). As the counterclaim fails to identify Saine as a person who might have committed any of the predicate offenses, the § 1962(c) claim must be dismissed as to him.

C. The Existence of an Enterprise—The Racketeering Claim Against NHI

The third-party complaint against NHI under § 1962(c) suffers from a different defect. It alleges, at ¶ 35, that the "enterprise" in this case is "NHI or, in the alternative, an association in fact of Saine and NHI representatives." I have concluded that the association between Saine and the NHI representatives cannot be the enterprise because that association has no identity separate from the pattern of racketeering. That leaves NHI as the enterprise. If NHI is the enterprise it cannot also be the "person" whom the Act penalizes for conducting the affairs of the "enterprise" by means of racketeering. Therefore, I dismiss the § 1962(c) claim against NHI.

■ Section 1962(c) makes it unlawful for any person to conduct the affairs of an enterprise through a pattern of racketeering activity. Thus, the statute only forbids the predicate acts insofar as an enterprise is involved. *Bennett v. Berg,* 710 F.2d 1361, 1362 (8th Cir.1983) (en banc) (approving panel discussion at 685 F.2d 1053, 1061 n. 10). Section 1961(4) defines an enterprise as including "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Two elements are necessary to establish an enterprise in such a way as to comply with § 1961(4) and still make sense of § 1962(c). First, there must be "evidence that the various associates function as a continuing unit" for a common purpose, *United States v. Turkette,* 452 U.S.

576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); and second, the enterprise must have an existence "separate and apart from the pattern of activity in which it engaged." *Id.*

There is conflict among the circuits on the proper interpretation of these tests. The Eighth Circuit has held that the evidence needed to prove the "enterprise" must be different from that used to prove the "pattern of racketeering." In *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *aff'd en banc,* 710 F.2d 1361 (8th Cir.1983), former and current residents of a retirement community brought an action under RICO alleging that their community had been subject to financial mismanagement and self-dealing such that they were in danger of losing "life-care" which they were promised. The district court dismissed the complaint for failure to state a claim. It held that as the community was characterized in the complaint as "pervasively fraudulent" it could not have an existence separate from the acts of racketeering. The Eighth Circuit reversed on this point. The test propounded by the court was that of "discrete existence" apart from the racketeering. 685 F.2d at 1060. *Accord, United States v. Anderson,* 626 F.2d 1358, 1372 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) ("discrete economic association existing separately from the racketeering acitivity.") As the community was a legal entity,[1] the court held that it had an existence separate from the predicate acts.

*United States v. Bledsoe,* 674 F.2d 647 (8th Cir.1982), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1983) used the same test but came to the opposite conclusion on the facts. The court held that a group of agricultural cooperatives and corporations could not constitute an enterprise under RICO. The court construed RICO as requiring "some structure separate from the racketeering activity and distinct from the organization which is a necessary incident to the racketeering." *Id.* at 664. *See also United States v. Anderson,* 626 F.2d 1358 (8th Cir.1980) (two county administrators did not constitute an enterprise).

The Third Circuit endorsed the separate existence requirement in *United States v. Riccobene,* 709 F.2d 214 (3rd Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). This was a criminal case in which the defendants were convicted of violating § 1962(d) by conspiring to violate § 1962(c). On appeal they argued, *inter alia,* that the government had not proved an "enterprise." After analyzing *Turkette,* the court concluded that:

> [I]t is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an ongoing basis is adequate to satisfy the separate existence requirement. As our discussion of the organization in this case has already shown, there is sufficient evidence to find that the enterprise served a clearinghouse and coordination function above and beyond that necessary to carry out any single one of the racketeering activities charged against the individual defendants.

*Id.* at 223–24.[2]

The Second Circuit, however, has rejected the view that the evidence offered to

---

1. Legal entities, rather than "associational enterprises" are particularly likely to constitute RICO enterprises, for no problem of separateness from the predicate acts will exist. *See, e.g., Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *aff'd en banc,* 710 F.2d 1361 (8th Cir.1983) (retirement community); *United States v. Weatherspoon,* 581 F.2d 595 (7th Cir.1978) (beauty college); *United States v. Lemm,* 680

F.2d 1193 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983) (legitimate insurance adjustment business was a distinct structure from the insurance fraud scheme).

2. The Sixth Circuit appears to agree. In *United States v. Sutton,* a pre-*Turkette* decision that held illegal enterprises to be outside RICO's am-

prove the "enterprise" and the "pattern of racketeering" must necessarily be distinct. Thus in *United States v. Mazzei*, 700 F.2d 85 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), a group of individuals conspired illegally to shave points in Boston College basketball games in order to maximize gambling proceeds. Even though the proof of the enterprise and the racketeering was the same, the court upheld Mazzei's conviction. Likewise, in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir.1983), the Second Circuit held that individuals who made profits from confidential inside information contrary to the securities laws, had been involved in both an enterprise and a pattern of racketeering activity, and hence were subject to RICO. *Id.* at 21–23.[3] *See also United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983) ("We have upheld application of RICO to situations where the enterprise was, in effect, no more than the sum of the predicate racketeering acts."); *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1067–68 (S.D.N.Y.1983).[4]

I will follow the Eighth Circuit. The syntax and wording of § 1962(c) compels this course. That section states that it is unlawful for any "person" "employed by or associated with" "any enterprise" "to conduct such enterprise's affairs" "through a pattern of racketeering activity." If the enterprise can be co-extensive with the racketeering activity, as the Second Circuit believes, the statute could simply state that

it is unlawful for any person to engage in a pattern of racketeering activity. No reference to "enterprises" would be necessary. *United States v. Sutton*, 605 F.2d 260, 266 (6th Cir.1979). Further, if the enterprise were merely the cumulation of the predicate acts of racketeering, RICO would be nothing more than a tool for combating recidivists. I do not believe that this was the purpose of this legislation. *See Noland v. Gurley*, 566 F.Supp. 210 (D.Colo. 1983). Finally, criminal statutes must be strictly construed: "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). The same is true of statutes providing for treble damages. Sands, *Sutherland Statutory Construction* § 59.02 (4th ed. 1974); *see Ralston v. Capper*, 569 F.Supp. 1575, 1581 (E.D.Mich.1983); *but cf. State Farm Fire & Cas. Co. v. Estate of Caton*, 540 F.Supp. 673, 682 (N.D.Ind.1982) (§ 1964(c) is remedial in nature, at least for the purpose of determining the survivability of an action based on that section).

The technical requirements for a § 1964(c) claim must be strictly adhered to because the statute was designed to accomplish certain congressional objectives. *See Noland v. Gurley, supra.* In face of the difficulties the courts have had in interpreting the provisions of RICO and also in face of the treble damage liability which defendants are subject to, it is imperative that Saine and NHI, as well as the court, be

---

bit (contrary to the later *Turkette* opinion), the court stated that "The plain meaning of [§ 1962(c)] indicates that the reference to enterprise was included to denote an entity larger than, and conceptually distinct from, any pattern of racketeering activity through which the enterprise's affairs might be conducted." 605 F.2d 260, 266 (6th Cir.1979).

3. The court relied on a dictum in *Turkette* to the effect that "proof used to establish the 'pattern of racketeering activity' element 'may in particular cases coalesce' with the proof offered to establish the 'enterprise' element of RICO." *Mazzei*, 700 F.2d at 89; *Moss*, 719 F.2d at 22. In neither case did the court expound on the facts that gave rise to the finding that this was a "particular" case.

The court, in *Mazzei*, also expressed concern that if it adopted the separate entity requirement, "a large-scale underworld operation which engaged solely in trafficking of heroin would not be subject to RICO's enhanced sanctions." This objection can be counteracted by an interpretation of the separateness requirement such as that adopted by *Riccobene*.

4. The Ninth Circuit appears to agree. *United States v. Bagnariol*, 665 F.2d 877, 890 (9th Cir. 1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). *But cf. United States v. DeRosa*, 670 F.2d 889, 895–96 (9th Cir.1982), *cert. denied,* 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1983), (government proved an enterprise that was wider than the predicate acts).

**1306**

placed on clear notice as to the elements constituting AIA's RICO allegations. *See Ralston v. Capper,* 569 F.Supp. 1575, 1581 (E.D.Mich.1983).[5]

 There is no indication that the alleged association between Saine and the NHI representatives had any existence separate and apart from the alleged predicate acts. Indeed, no facts are revealed that would satisfy even the lighter *Riccobene* test, because the coordination function performed by the organization in that case is absent.[6] The allegation that the "association in fact" between Saine and NHI representatives constitutes a RICO enterprise must therefore be dismissed. NHI, on the other hand, is a legal entity with a separately established insurance business. Its business is, at a minimum, broader than the alleged racketeering activity. Therefore, it can be named as a RICO enterprise.

 If NHI is the "enterprise" under § 1962(c), it cannot also be the "person" under that section. Section 1962(c) makes it unlawful for a "person" to participate in the affairs of an enterprise through racketeering activity. It does not hold the "enterprise" itself liable. *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir.1982), *aff'd en banc,* 710 F.2d 1361 (8th Cir.1983); *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 243 (E.D.Pa.1983); *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill.1982); *Bays v. Hunter Savings Assoc.,* 539 F.Supp. 1020, 1023–24 (S.D.Ohio 1982) ("RICO does not hold the enterprise liable, but only those persons who seek to participate in the affairs of the enterprise through a pattern of racketeering activity."); *Van Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125, 1136 (D.Mass.1982).[7] Fur-

5. This is in keeping with the policies of the Federal Rules of Civil Procedure where allegations of fraud are concerned. F.R.Civ.P. 9(b) requires allegations of fraud to be stated with particularity. This has been applied to the pleading of the elements of a RICO charge. *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 682–83 (N.D.Ga.1983); *see also Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 241–42 (E.D.Pa. 1983). The reasons underlying the rule justify this application.

Rule 9(b) has been justified on the ground that fraud embraces a wide variety of potential conduct, so that a defendant needs a substantial amount of particularized information in order to prepare a response. *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774 (D.Colo.1964). Fraud claims also offer the claimant an extra negotiating point that may help force a settlement. *See Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972). Finally, a charge of fraud is a serious matter with attendant consequences to a person's reputation and goodwill. No one should be subject to such harm unless the accuser makes specific allegations.

RICO is a very broad statute, *see United States v. Turkette,* 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981), which has become very popular with civil claimants as well as prosecutors. *See* Strafer, Massumi & Skolnick, *Civil RICO in the Public Interest: "Everybody's Darling,"* 19 Am.Crim.L.Rev. 655 (1982). Because it is a complicated statute that covers conduct ranging from sports bribery to white slave traffic, a defendant needs a substantial amount of information to prepare a response. A RICO defendant also needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide this protection. A charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud. RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon. Irresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11, F.R. Civ.P.

6. While I recognize that, on a motion to dismiss, the allegations of the non-movant must be taken as true, *Olpin v. Ideal Nat. Ins. Co.,* 419 F.2d 1250 (10th Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970), I am not required to accept "footless conclusions of law," *Ryan v. Scoggin,* 245 F.2d 54 (10th Cir.1957). The statement that "the enterprise … is … an association in fact of Saine and NHI representatives" falls into the latter category.

7. Some courts, in criminal cases, have held that the person and the enterprise can be one and the same. *See, e.g., United States v. Hartley,* 678 F.2d 961, 986–90 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *United States v. Benny,* 559 F.Supp. 264 (N.D.Cal.1983). But as the court in Hartley conceded, "this problem would never have sur-

ther, § 1962(c)'s proscription only runs to those employed by or associated with an enterprise. A corporation such as NHI cannot logically be employed by or associate with itself. *Seville Indus. Mach. v. Southmost Mach. Corp.*, 567 F.Supp. 1146, 1151 (D.N.J.1983). *See* Tarlow, *RICO Revisited*, 17 Georgia L.Rev. 291, 344–45 (1983). The § 1962(c) claim against NHI must therefore be dismissed.

### D. The RICO Conspiracy Charge

AIA's counterclaim also charges Saine and NHI with conspiring to conduct "the enterprise" through a "pattern of racketeering activity."[8] Counterclaim ¶ 36.

■ The third and fifth circuits have acknowledged that the RICO conspiracy section does not alter traditional conspiracy doctrine. *United States v. Riccobene*, 709 F.2d 214 (3rd Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Sutherland*, 656 F.2d 1181 (5th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). At a minimum, a conspiracy requires proof of one overt act by one defendant in furtherance of the conspiracy, and the assent of each defendant to the operation of the conspiracy. *See Sutherland, supra*, at 1181 n. 4 and 1193. *See also Rodriquez v. Bar-S Food Co.*, 539 F.Supp. 710, 718–19 (D.Colo.1982).

I have repeatedly held that general allegations of a conspiracy which are unsup-

ported by facts are insufficient to constitute a cause of action. *See Rivas v. State Bd. for Community Colleges*, 517 F.Supp. 467, 471 (D.Colo.1981); *Sanchez v. Marquez*, 457 F.Supp. 359, 363–64 (D.Colo. 1978). AIA's counterclaim merely states that "Saine and NHI have conspired to conduct ... the affairs of the enterprise through a pattern of racketeering activity." Counterclaim ¶ 36. No factual allegations are made by AIA averring any agreement between Saine and NHI to commit any substantive RICO violation. Nor is there any allegation of any overt act taken pursuant to the conspiracy by either Saine or NHI. Extensive prefatory factual allegations, however, are set forth in the paragraphs preceding paragraph 36. These do not contain any factual allegation of an agreement between NHI and Saine to commit wire fraud. On a motion to dismiss, however, I must make reasonable inferences in favor of the non-movant. As it is reasonable to infer an agreement between NHI and Saine, I do not dismiss AIA's conspiracy claim on this ground.[9] But see Section I.F. infra.

### E. The Racketeering Enterprise Injury

[10] In the alternative, Saine and NHI argue that AIA failed to allege an injury to business or property "by reason of a violation of § 1962." 18 U.S.C. § 1964(c).[10] Their position is that the statute requires the injury to stem not from the predicate offenses, for which adequate remedies are

---

faced had it charged the defendants collectively as an "association in fact" and charged [the corporation] singly as the enterprise." 678 F.2d at 989. The court in *Benny* stated that:

> The argument against identification of the defendant and the enterprise might be viable where a corporate defendant is involved. In such a situation, the government remains able to prosecute the culpable individuals—agents, officers, and employees—associated with the corporate enterprise. However, if an individual defendant/enterprise cannot be prosecuted, he entirely escapes responsibility under RICO. 559 F.Supp. at 268

**8.** Section 1962(d) prohibits a conspiracy to violate § 1962(a)–(c).

**9.** Saine also argues that the conspiracy claim must be dismissed because a corporation cannot conspire with one of its agents, for a conspiracy

cannot exist among a "single person." *See Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 209 (E.D. Mich.1981). This argument is premised upon the fiction of corporate entity, which can in appropriate circumstances be pierced. As RICO should be concerned with the problem of intracorporate conspiracies, this is an appropriate case for disregarding the fiction. *See Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1241 (S.D.N.Y.1983).

**10.** Section 1964(c) of Title 18 U.S.C. provides that:

> Any person injured in his business or property *by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. (Emphasis added).

already available, but from the operation of an enterprise through a pattern of racketeering activity.

The courts have split on this issue as well.[11] I need not reach it, however, for even if I were to endorse the concept of a "racketeering enterprise injury" I would find that paragraph 37 [12] sufficiently alleges such injury.

### F. The Organized Crime Element of RICO

■■■■■ RICO does not by its terms prohibit only the acts of those associated with "organized crime." It was, however, the declared purpose of Congress to "seek the eradication of organized crime in the United States." *See United States v. Turkette,* 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981). I therefore held, a few months ago, in *Noland v. Gurley,* 566 F.Supp. 210 (D.Colo.1983) that the courts must interpret RICO in the light of its purpose and "avoid[ ] a slavish literalism that would escort into federal court through RICO what traditionally have been civil actions in state courts." *Id.* at 218 (quoting *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.,* 527 F.Supp. 206 (E.D.Mich.1981)). In *Noland I* dismissed a RICO complaint because sufficient remedies were available to the plaintiff. Similarly, AIA has common law remedies available to it that will fully redress its claimed injuries. I therefore dismiss the RICO conspiracy claim on this ground. I also dismiss the § 1962(c) claims for this reason.

### II. THE FRAUD COUNTERCLAIM

In its second claim for relief, AIA asserts a claim against NHI and Saine premised on the allegation that Saine and NHI knowingly and recklessly made false statements to AIA policyholders.

The issue posed is whether an entity not a party to a fraud can nevertheless state a claim for relief if the entity is indirectly damages by the fraud. And if so, has that claim been properly pleaded?

■■■■■ Questions involving the scope of liability for fraudulent misrepresentations are questions of local rather than federal law. *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 547 (D.C.Cir.1975). In Colorado the law is that a complaint based on fraud can only be made by one within the class of persons intended to be influenced by the misrepresentation. *Institute for Professional Development v. Regis College,* 536 F.Supp. 632 (D.Colo.1982); *Mead & Mount Const. Co. v. Fox Metals Industries, Inc.,* 511 P.2d 509, 510 (Colo. App.1973); *See generally* Prosser, *Misrepresentations and Third Persons,* 19 Vand. L.Rev. 231 (1966). This need not necessarily be the party to whom the false representation was made. Thus in *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 447 F.Supp. 543 (D.Colo.1977), a broker made representations to a husband intending that the latter use them to influence his wife, who made the investment decisions. The court held that the wife could properly assert fraud. Similarly, misrepresentations made to an agent can

---

**11.** Many of the recent cases have come down in favor of the "racketeering enterprise injury" concept. Such an injury has usually been defined as either the loss of control over an ongoing enterprise due to infiltration by means of two concerted prohibited offenses, or a competitive injury to a legitimate enterprise by that racketeering activity. *See, e.g., Dakis v. Chapman,* 574 F.Supp. 757, 761–62 (N.D.Cal.1983); *In re Action Indus. Tender Offer,* 572 F.Supp. 846, 851–52 (E.D.Va.1983); *King v. Lasher,* 572 F.Supp. 1377, 1382 (S.D.N.Y.1983); *Guerrero v. Katzen,* 571 F.Supp. 714, 718–19 (D.D.C.1983) ("the most meaningful limitation upon an otherwise capacious statute"); *Bankers Trust Co. v. Feldesman,* 566 F.Supp. 1235, 1240–41 (S.D.N.Y.

1983); *See Noland v. Gurley,* 566 F.Supp. 210, 218 (D.Colo.1983). Other courts, however, have found this restriction undesirable. *See, e.g., Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 244 (E.D.Pa.1983); *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1240 (S.D. N.Y.1983); *Seville Indus. Mach. v. Southmost Mach. Corp.,* 567 F.Supp. 1146 (D.N.J.1983). *See* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L.Rev. 1101, 1109–14 (1982).

**12.** Paragraph 37 alleges that "AIA has suffered competitive injury as a result of the illegal advantage the enterprise has obtained through its pattern of racketeering activity."

be sued upon by the principal. *Regis, supra,* at 634.

■ Assuming, *arguendo,* that the NHI representatives intended their fraudulent statements, made to AIA policyholders, to reach AIA itself, AIA would still have to prove that it relied on the misrepresentation and that it had a right to do so. *Zimmerman v. Loose,* 162 Colo. 80, 88, 425 P.2d 803, 807 (1967). The representations made to the policyholders related to facts particularly within AIA's knowledge. Therefore, I find that it could not have been ignorant of the falsity of the utterances. *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937). Consequently it could not have relied on them. *Huston v. Ohio & Colorado Smelting & Refining Co.,* 63 Colo. 152, 165 P. 251 (1917). If it did, it certainly had no right to do so.

In its brief AIA argues that it has properly stated a claim for constructive fraud. Its pleadings, however, fail to give notice of this claim. The claim must therefore be dismissed, albeit with leave to amend, if indeed AIA may do so within the limitations of Rule 11, F.R.Civ.P., within 10 days from the date of this order.

## III. THE UNFAIR COMPETITION COUNTERCLAIM

■ NHI's next contention is that the counterclaim based on unfair competition fails to state a claim or at least requires a more definite statement. I disagree. "[F]actual pleading is required insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests, thereby enabling a defendant to prepare a responsive pleading." *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1388 (10th Cir.1980). AIA has alleged unfair competition and unfair trade practices.[13] It also expounded upon the factual underpinnings of this claim. It alleged that Saine was recruiting AIA's employees for NHI while he was still in AIA's employ. ¶ 13. It alleged a conspiracy between Saine and NHI to obtain confidential information from AIA. ¶ 18. It alleged that misrepresentations about AIA were made by NHI representatives to AIA customers, as part of a plan by NHI to compete directly with AIA. ¶ 21–31. All of these allegations are incorporated into AIA's claim for relief based on unfair competition and unfair trade practices. ¶ 45.

Therefore, I conclude that AIA's pleading gives Saine and NHI sufficient notice of the facts and claims to which they must respond. The motion for a more definite statement is also denied.

## IV. THE LANHAM ACT COUNTERCLAIM

■ In its fourth claim for relief, AIA asserts a violation by Saine and NHI of the Lanham Act, 15 U.S.C. § 1051 *et seq.* Saine wishes me to dismiss this claim on the grounds that it does not allege that Saine made, caused to be made or was even aware of the alleged misrepresentations. This motion has no merit. Paragraph 49 clearly alleges that "Saine and NHI have made false statements of fact about its (NHI's) product."[14] This is enough to state a claim for relief under § 43(a) of the Lanham Act. *See L'Aiglon Apparel v. Lana Lobell, Inc.,* 214 F.2d 649 (3d Cir. 1954).

## V. THE THIRD PARTY COMPLAINT

■ A third-party complaint may be asserted under F.R.Civ.P. 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant. 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1446 at 246 (1971). A third party com-

---

**13.** Colorado recognizes the common law tort of unfair competition. *American Television & Com. Corp. v. Manning,* 651 P.2d 440 (Colo.App. 1982).

**14.** The next sentence in ¶ 49 admittedly refers only to "NHI representatives" and not to Saine:

"in particular, NHI representatives have falsely claimed that its policy presents the same coverage as an AIA policy for a much cheaper rate." This does not restrict the general allegations of the prior sentence.

plaint is a narrow device for imposing liability on a person "who is or may be liable to [the defendant] for all or part of the plaintiff's claim against him." It cannot be used as a method of bringing into controversy other matters which happen to have some relationship to the original action. *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809, 815 (D.Colo.1968).

■ Saine's complaint against AIA is for breach of a contract under the terms of which AIA allegedly owes Saine money as commission for insurance policies sold by him. AIA's complaint against NHI does not derive from this complaint for breach of contract. NHI's liability does not depend at all on the outcome of the breach of contract action.

AIA argues that one of its defenses to the breach of contract action is that Saine and NHI acted in concert to cause damage to AIA. This still does not help AIA. The argument that NHI has been properly impleaded because it has been implicated in AIA's defense suffers from the failure to distinguish a defense from a liability. Whether AIA's defense were to succeed, NHI will not be liable under the breach of contract action.

The third party complaint must therefore be dismissed in its entirety, without prejudice except as regards the first claim for relief, which is dismissed with prejudice.[15]

## VI. SUMMARY

In view of the length of this decision I will briefly summarize my conclusions.

1. Saine's motion to dismiss.

I grant this motion as respects the RICO counterclaim, without leave to amend. I also grant the motion with respect to the fraud counterclaim. However, in view of the possibility of stating a claim based on constructive fraud, I will grant AIA 10 days from the date of this order in which to amend its pleadings. The rest of Saine's motion is denied.

2. NHI's motion to dismiss.

3. This case is set for a scheduling conference before me on April 17, 1984 at 8:00 a.m.

I grant this motion *in toto*, but grant leave to amend within ten days from the date of this order, except as regards the RICO claim, which I dismiss with prejudice.

---

**15.** If AIA wishes to dispose of its claims against NHI in this action it should consider using Rule 13(h). 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1434 at 186–88 (1971).