**John BROOKS and Lorraine Brooks, Plaintiffs,**

v.

**BANK OF BOULDER, Robert G. Joseph, Daniel F. Hatch, David D. Parrish, Steven K. Bosley, Charles Jensen, Bruce McDowell, and Thomas Ratterree, Defendants.**

**Civ. A. No. 94–K–2689.**

United States District Court, D. Colorado.

July 1, 1995.

Douglas M. Tisdale and Theodore A. Ulrich, Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, CO, for plaintiffs.

Joseph French, French & Stone, Boulder, CO, for Bank of Boulder.

David R. Eason, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Bosley.

Susan M. Hargleroad, Pendleton & Sabian, Denver, CO, for Jensen, McDowell and Ratterree.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs, John and Lorraine Brooks, allege they were defrauded by a Ponzi scheme and check-kiting scheme orchestrated by M & L Business Machines Co. ("M & L"). Plaintiffs further allege the Bank of Boulder ("the Bank") aggravated their losses because it discovered the schemes and, rather than halting them and alerting investors, perpetuated the schemes in order to minimize its own losses.

Defendants consist of the Bank and seven individual defendants. Three of the individual defendants, Robert G. Joseph, Daniel F. Hatch, and David D. Parrish, were directors of M & L and are referred to collectively as the "M & L Defendants". Court records disclose the M & L Defendants were not served. Plaintiffs voluntarily dismissed Parrish without prejudice and Joseph and Hatch have not responded to Plaintiffs' allegations.

The remaining four individual defendants, Steven K. Bosley, Charles Jensen, Bruce McDowell, and Thomas Ratterree, were officers and/or employees of the Bank and are referred to collectively as the "Individual Bank Defendants".

The Bank and the Individual Bank Defendants move to dismiss Plaintiffs' Amended Complaint.

Plaintiffs make the following allegations: In 1987, the M & L Defendants began a classic Ponzi scheme in which M & L provided investors with very attractive rates of return in order to entice further investment. The investors were told the returns were from the resale of computers and office equipment. The equipment did not exist, however, and the returns were funded by investor capital, loan proceeds and check kiting.

M & L maintained accounts at the Bank from March 1989 through early 1991. M & L deposited funds from the Ponzi scheme into the accounts but generated a negative account balance by kiting checks without sufficient funds. This check kiting scheme funded the returns of the Ponzi scheme.

The Bank allegedly knew of the kiting scheme by January 1990 and knew or should have known of the Ponzi scheme by June 1990. To mitigate possible losses to the Bank from a collapse of the Ponzi scheme, however, it is further alleged the Bank perpetuated both schemes.

The Bank benefitted from its participation in the kiting scheme because it: charged various service fees; shifted the risks from the Bank to investors; and reduced its risk by directly transferring fraudulently obtained funds from investors to the Bank. The Bank also benefitted from its perpetuation of the Ponzi scheme because it received, used and invested the proceeds of the scheme deposited at the Bank.

In October 1990, M & L filed for bankruptcy. The Bank violated the Bankruptcy Code by engaging in transactions which reduced the M & L estate property after a bankruptcy petition was filed in October of 1990. It also made loans to the M & L Defendants to change the Bank's debt position from unsecured to secured to reduce the Bank's exposure and shift it to creditors of M & L.

Plaintiffs claim all Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (c) and (d), and the Colorado Organized Crime

Control Act ("COCCA"), Colo.Rev.Stat. § 18–17–104(1)(a), (3), and (4) (1986). Plaintiffs claim the Bank was negligent, was unjustly enriched, and violated the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6–1–105(1)(q) (1992). They also bring a separate claim for exemplary damages against the Bank.

In their responses to the motions to dismiss, Plaintiffs withdraw their fourth (RICO) and tenth (COCCA) claims for relief against the Bank.

Jurisdiction is based upon 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1367 (supplemental jurisdiction over state claims).

For the reasons which follow I dismiss the RICO, COCCA, Colorado Consumer Protection Act, negligence, and exemplary damages claims; and deny the motion to dismiss the unjust enrichment claim.

### I. *Standards for Motions to Dismiss.*

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide a short and plain statement of the claim showing the pleader is entitled to relief. Rule 9(b), however, requires a plaintiff pleading fraud to state with particularity the circumstances constituting the fraud. The dismissal of a claim for failing to satisfy Rule 9(b) is treated as a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Ambraziunas v. Bank of Boulder,* 846 F.Supp. 1459, 1462 (D.Colo.1994). In ruling on a motion to dismiss under Rule 12(b)(6), all factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the pleader. A claim should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him or her to relief. *Id.*

### II. *Merits.*

A. *RICO and COCCA Claims (Claims 1 through 12).*

1. *RICO Claims (18 U.S.C. §§ 1962(a).(c)) (Claims 1, 2, 3, 5).*

The Bank and the Individual Bank Defendants contend Plaintiffs' RICO claims fail under Rule 12(b)(6) because they have failed to plead fraud with the specificity required by Rule 9(b).

Section 1962 of RICO sets out numerous activities prohibited under the Act. Section 1962(a) makes it unlawful to invest funds derived from a pattern of racketeering activity in an enterprise engaged in interstate commerce. Section 1962(c) provides for the liability of any person associated with an enterprise which affects interstate commerce to conduct or participate in the affairs of such enterprise through a pattern of racketeering activity.

In pleading a claim under RICO, eight elements are critical:

1) That the defendant

2) through the commission of two or more of the enumerated predicate acts

3) which constitute a "pattern"

4) of "racketeering activity"

5) directly or indirectly participates in the conduct of

6) an enterprise

7) the activities of which affect interstate commerce, and, that

8) the plaintiff was injured in his or her business or property by reason of such conduct.

*Ambraziunas v. Bank of Boulder,* 846 F.Supp. 1459, 1462–63 (D.Colo.1994); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1302 (D.Colo.1984). Each of these elements must be pled with particularity under Rule 9(b). *Ambraziunas,* 846 F.Supp. at 1463; *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992). In accordance with Rule 9(b), Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof." *Ambraziunas,* 846 F.Supp. at 1462.

The purpose of Rule 9(b) is to inhibit the filing of complaints as a pretext to discover unknown wrongs, to protect the defendant's reputation, and to give notice to the defendant regarding the complained of conduct. *Farlow,* 956 F.2d at 987 (10th Cir. 1992). A plaintiff alleging fraud must know

what the claim is at the time the complaint is filed. *Id.* at 990. Finally,

> [b]ecause it is a complicated statute that covers conduct ranging from sports bribery to white slave traffic, a defendant needs a substantial amount of information to prepare a response. A RICO defendant also needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide this protection. A charge of racketeering, with its implications of links to organized crime [and attendant consequences to a person's reputation and goodwill], should not be easier to make than accusations of fraud. RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon. Irresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11, F.R.Civ.P.

*Saine,* 582 F.Supp. at 1306 n. 5. In filing such serious allegations one may not shoot first and aim later.

### a. *Predicate Acts.*

■ Rule 9(b) also governs the pleading of a RICO or COCCA predicate offense which involves fraud. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1362 (10th Cir.1989); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1303 (D.Colo.1984). To meet Rule 9(b), a plaintiff must identify with specificity the circumstances constituting the fraud in the predicate acts. *Ambraziunas,* 846 F.Supp. at 1463; *Saine,* 582 F.Supp. at 1303. When plaintiff is dealing with more than one defendant, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances. *Saine,* 582 F.Supp. at 1303.

The Amended Complaint alleges the RICO predicate acts to be mail, wire and bank fraud.

### (i) *Bank and Bankruptcy Fraud.*

Plaintiffs concede they have not alleged a separate predicate act of bank fraud with respect to the Bank and the Individual Bank Defendants, and withdraw all allegations of bank fraud.[1] The Amended Complaint alleges bankruptcy fraud by the M & L Defendants only and does not identify it as a predicate act.

### (ii) *Mail and Wire Fraud.*

■ To establish mail fraud a plaintiff must show: (1) a scheme or artifice to defraud or obtain money or property by false pretenses, representations, or promises; and (2) the use of the United States mails for the purpose of executing the scheme. *United States v. Washita Constr. Co.,* 789 F.2d 809, 814 (10th Cir.1986). To establish wire fraud a plaintiff must show: (1) a scheme or artifice to defraud or obtain money by false pretenses, representations or promises; and (2) use of interstate wire communications to facilitate the scheme. *United States v. Drake,* 932 F.2d 861, 863 (10th Cir.1991). Plaintiffs must allege the number of wires, the precise dates, and how they further the scheme. *Weiszmann v. Kirkland and Ellis,* 732 F.Supp. 1540, 1546 (D.Colo.1990). The defendant must participate in each with the specific intent to defraud. *United States v. Washita Constr. Co.,* 789 F.2d at 817.

There are no allegations in the Amended Complaint of interstate wire communications. The only specific allegations of mailings are that Plaintiffs received checks and correspondence from M & L, and that the Bank received checks from investors payable to M & L. (Am.Compl. Paras. 51, 75, 76, 78, 79.)

### b. *Pattern of Racketeering.*

The Bank and the Individual Bank Defendants contend the alleged predicate acts do not support a pattern of racketeering.

■ To show a pattern of racketeering activity, Plaintiffs must show the defendant committed racketeering predicate offenses which are related and amount to or pose a

---

**1.** Defendant Bosley contends that a check kiting scheme did not occur because the alleged scheme only involved the Bank of Boulder and normally such a scheme must involve two or more banks. *See, e.g., Williams v. United States,* 458 U.S. 279, 281 n. 1, 102 S.Ct. 3088, 3089 n. 1, 73 L.Ed.2d 767 (1982). This issue, however, is no longer relevant since Plaintiffs have withdrawn their bank fraud, i.e., check kiting, allegations.

threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

The schemes have terminated and Plaintiffs concede the racketeering activity was not open-ended. Absent a threat continuing into the future, a plaintiff can demonstrate continuity by pleading criminal activity over a substantial period of time. *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. "Predicate acts extending over a few weeks or months and threatening no future conduct do not satisfy this: Congress was concerned in RICO with long-term criminal conduct." *Id.* "[Six to seven months] is not a long enough period to state a close-ended RICO claim." *Alter v. DBLKM, Inc.*, 840 F.Supp. 799, 809 (D.Colo.1993).

Plaintiffs received two checks in April 1990, a letter in October 1990, and a second letter in November 1990. The Bank received checks in September of 1990. The predicate acts, therefore, are alleged to span a period of, at most, seven months.[2] The Amended Complaint fails to allege a pattern of racketeering necessary to support a claim under 18 U.S.C. §§ 1962(a) and (c). I therefore dismiss claims 1, 2, 3 and 5.

2. *COCCA Claims (Colo.Rev.Stat. § 18–17–104(3) (1986)) (Claims 9 and 11).*

Plaintiffs' ninth and eleventh claims for relief are brought under Colo.Rev.Stat. § 18–17–104(3) (1986), a provision of COCCA that is modelled after RICO § 1962(c). The section provides for the liability of any person associated with an enterprise which affects interstate commerce to conduct or participate in the affairs of such enterprise through a pattern of racketeering activity. Under COCCA, it is not necessary to allege continuity. Plaintiffs must, however, identify two criminal predicate acts that are related to the conduct of the enterprise. *People v. Chaussee*, 880 P.2d 749, 758 (Colo.1994).

Section 1962(c) was designed to prohibit the operation or management of an enterprise through a pattern of racketeering. *Reves v. Ernst & Young*, —— U.S. ——, ——, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993). In order to impose liability under 1962(c), plaintiffs must allege facts establishing the conduct or participation of the affairs of the enterprise through a pattern of racketeering. The facts must show that the particular defendant participated in the operation or management of the enterprise itself. *Id.* at ——, 113 S.Ct. at 1163.

In the ninth claim, Plaintiffs allege all Defendants conducted, or participated in, M & L's pattern of racketeering activity in violation of COCCA. In the eleventh claim, Plaintiffs allege the M & L Defendants and the Individual Bank Defendants conducted, or participated in, the Bank's alleged pattern of racketeering in violation of COCCA.

The predicate acts alleged are mail, wire and bank fraud. Plaintiffs have withdrawn the allegations of bank fraud. There are no allegations in the Amended Complaint of interstate wire communications. The only specific allegations of mailings are that Plaintiffs received checks and correspondence from M & L, and that the Bank received checks from investors payable to M & L. (Am.Compl, Paras. 51, 75, 76, 78, 79.)

The Amended Complaint, therefore, fails adequately to allege the Bank and the Individual Bank Defendants conducted, or participated in, the mailings to Plaintiffs by M & L or the Individual Bank Defendants conducted, or participated in, the receipt of checks from investors.

Thus, I dismiss claims 9 and 11.

3. *COCCA Claims (Colo.Rev.Stat. § 18–17–104(1)(a) (1986)) (Claims 7 and 8).*

Plaintiffs' seventh and eighth claims for relief are brought under Colo.Rev.Stat. § 18–17–104(1)(a) (1986), a provision of COCCA that is modelled after RICO § 1962(a). Section 1962(a) makes it unlawful to invest funds

---

**2.** Plaintiffs assert the duration of the pattern of racketeering activity was from March 1989 to December of 1990. (Pls.' Resp.Bank's Mot.Dismiss at 22.) These allegations, however, include alleged acts of bankruptcy fraud. The Amended Complaint, however, does not list bankruptcy fraud as a predicate act. In the absence of bankruptcy fraud allegations, the duration of the alleged pattern was from April 1990 to September 1990.

derived from a pattern of racketeering activity in an enterprise engaged in interstate commerce.

In the seventh claim, Plaintiffs allege the Bank injured them by investing loan fees and service charges, obtained from the Ponzi scheme, in the Bank in violation of COCCA. In the eighth claim, Plaintiffs allege the Bank injured them, by using and investing proceeds of the Ponzi scheme in M & L, when the Bank provided loans to M & L and its principals. The Bank contends the Amended Complaint fails sufficiently to allege a 1962(a)–type injury.

The provisions of 1962(a) were directed to prohibit the investment of proceeds derived from criminal activity in an enterprise engaged in interstate commerce. *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct 1163, 1171, 122 L.Ed.2d 525 (1993). Plaintiffs must establish a direct, proximate relationship between the alleged violations and the alleged injury. *Holmes v. S.I.P.C.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In order to recover under 1962(a), plaintiffs must plead that the injury flowed from defendant's use or investment of racketeering income, not the predicate acts themselves. *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

Plaintiffs' alleged damages are their investments in M & L, the M & L bankruptcy litigation, and their loan to the Bankruptcy Trustee. Plaintiffs have not identified a direct causal relationship between any use or investment of income received by the Bank and Plaintiffs' damages. Thus, the Amended Complaint fails to state a claim under COCCA, Colo.Rev.Stat. § 18–17–104(1)(a), and I dismiss claims 7 and 8.

4. *Conspiracy Under RICO (18 U.S.C. § 1962(d)) and COCCA (Colo.Rev.Stat. § 18–17–104(4) (1986)) (Claims 6 and 12).*

In the sixth and twelfth claims for relief, Plaintiffs allege all Defendants conspired to violate RICO, 18 U.S.C. §§ 1962(a) and (c), and COCCA, Colo.Rev.Stat. §§ 18–17–104(1)(a) and (3). The Bank and Individual Bank Defendants contend Plaintiffs have failed to plead with particularity any agreement among Defendants to commit two or more properly pleaded predicate acts.

For a conspiracy claim under 1962(d), plaintiffs must plead with particularity an agreement to a pattern of racketeering activity, and an agreement to the statutorily proscribed conduct. *Farlow,* 956 F.2d at p. 990, fn. 11. A conspiracy claim must fail where plaintiffs fail to allege any agreement or concerted action. *Langley v. Adams County,* 987 F.2d 1473, 1482 (10th Cir.1993). Mere association with conspirators, even with knowledge of their involvement in a crime, is insufficient to prove participation in a conspiracy. *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990).

A RICO conspiracy must be aimed at a substantive RICO violation. *Schroder v. Volcker,* 864 F.2d 97, 98 (10th Cir.1988). Therefore, a conspiracy claim must fail where the substantive claims are themselves deficient. *Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987).

Plaintiffs must specifically plead Defendants agreed to commit a pattern of racketeering. As previously discussed, no pattern of racketeering has been established to support a RICO claim. There also are no allegations in the Amended Complaint of an agreement among Defendants that would support a RICO or COCCA conspiracy claim. Therefore, I dismiss claims 6 and 12.

B. *Thirteenth Claim for Negligence against the Bank.*

In the thirteenth claim for relief, Plaintiffs allege injury as a proximate result of the Bank's negligence in allowing the kiting and Ponzi schemes to be conducted through its accounts.

In their response, Plaintiffs contend a common law duty of care arose because a reasonable person would anticipate the harm they suffered and realize they were within the danger zone of the harm. They also contend the statutes the Bank is alleged to have violated supplied a duty of care because the

statutes were designed to protect them from the harms they suffered.

The Bank contends it has no duty to Plaintiffs under Colorado law. It maintains a duty upon it to investigate, discover, or disclose the activities of its customers to third persons would violate the Bank's duty of confidentiality to other customers, and cause the loss of privacy and additional expense for Bank, its depositors and its shareholders. *See Rubenstein v. South Denver Nat. Bank,* 762 P.2d 755, 756–57 (Colo.App.1988), *cert. denied* (January 17, 1989).

"The traditional elements of a negligence claim are as essential under modern pleading as they ever were, and a complaint should indicate that each of these elements is present in order to be sufficient." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1249 (1990); *See Resolution Trust Corp. v. Fleischer,* 826 F.Supp. 1273 (D.Kan.1993).

The Amended Complaint does not allege a specific duty owed to Plaintiffs by the Bank to support a negligence cause of action or facts constituting a breach thereof. *See Ambraziunas,* 846 F.Supp. at 1465. Therefore, I dismiss the thirteenth claim.

C. *Fourteenth Claim against Bank under Colorado Consumer Protection Act. (Colo.Rev.Stat. § 6–1–105(1)(q) (1992)).*

■■■ The Colorado Consumer Protection Act prohibits the contriving, preparation, setting up, operation, publication by means of advertising, or promotion of any pyramid promotional scheme. Colo.Rev.Stat. § 6–1–105(1)(q) (1992). Promoting is defined as "inducing one or more other persons to become participants, or attempting to so induce, or assisting another in promoting a pyramid promotional scheme by means of references or otherwise." Colo.Rev.Stat. § 6–1–102(7) (1992).

Plaintiffs allege the Bank actively promoted M & L and participated in inducing investors to fund M & L's Ponzi scheme. As this claim sounds in fraud, Plaintiffs must comply with Rule 9(b)'s requirement of particularity.

Plaintiffs, however, have not alleged how the Bank promoted a Ponzi scheme, induced

investors to participate in it or that they had any direct communication with potential investors. Thus, Plaintiffs have failed to provide the requisite particularity for this claim. Therefore, I dismiss the fourteenth claim.

D. *Fifteenth Claim against the Bank for Unjust Enrichment.*

■■■ In order to recover on the basis of unjust enrichment, Plaintiffs must establish that a benefit was conferred upon the Bank by them, and that the Bank appreciated that benefit under circumstances where it would be inequitable for the Bank to retain the benefit without payment of its value. *Martinez v. Continental Enterprises,* 730 P.2d 308, 317 (Colo.1986).

■■■ The Bank contends Plaintiffs have not identified any benefit they conferred on the Bank.

Plaintiffs allege they conferred a benefit on the Bank in the amount of their investment. These funds entered M & L's account and were available for offset against M & L's debt to the bank. Due to the hold that was placed on M & L's depository account in March 1990, the Bank had use of Plaintiffs' monies. Plaintiffs' monies would not have entered the Bank but for the Bank's conduct in promoting the Ponzi scheme.

Rule 8(a)(2) requires a short and plain statement of the claim showing the pleader is entitled to relief, enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Plaintiffs have satisfied this standard in pleading an unjust enrichment claim. Thus, I deny the motion to dismiss the fifteenth claim.

E. *Sixteenth Claim for Exemplary Damages against the Bank.*

■■■ A claim for exemplary damages is not a separate and distinct claim, but is auxiliary to an underlying claim for actual damages. *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 213 (Colo.1984). Negligence cannot serve as a basis for exemplary damages. *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852, 854 (1979).

In Plaintiffs' responses to the motions to dismiss, they concede that exemplary damages are a remedy and not a separate claim

for relief. They also concede that they will not be entitled to exemplary damages in addition to statutory multiple damages. Thus, I dismiss the sixteenth claim for relief.

### F. *Statutes of Limitations*

#### 1. *RICO and COCCA claims.*

 The Bank and the Individual Bank Defendants contend Plaintiffs' RICO claims are barred by the applicable four-year limitations period. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). A RICO claim accrues when a plaintiff knows or should have known of the existence of all the elements that make up such a claim. *Indianapolis Hotel Investors, Ltd. v. Aircoa Equity Interests, Inc.*, 733 F.Supp. 1406, 1409 (D.Colo.1990).

Plaintiffs were notified of M & L's bankruptcy in October 1990. The bankruptcy trustee began an investigation in December 1990 and filed suit in October 1991. Plaintiffs' action was commenced on November 23, 1994.

Plaintiffs assert they could not have known of the existence of all the elements of their RICO and COCCA claims before December 1990 because they relied on the M & L Trustee to investigate the schemes and the investigation began in December 1990. Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs, it does not appear beyond doubt that Plaintiffs can prove no set of facts which would show they did not know nor should have known of all the elements of their RICO and COCCA claims until after December 1990. Plaintiffs, therefore, have sufficiently alleged that they met the four year period of limitations applicable to these claims.

#### 2. *Colorado Consumer Protection Act claim.*

 The Bank contends the Colorado Consumer Protection Act claim is barred by the statute of limitations. A claim for relief under the Colorado Consumer Protection Act must be commenced within three years after: the false, misleading or deceptive act or prac-

tice occurred; the last in a series of such acts or practices occurred; or, the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the act or practice. It is tolled only if the defendant engaged in conduct calculated to induce Plaintiffs to refrain from or postpone the commencement of the action. C.R.S. § 6–1–115 (1992).

In February 1991 the bankruptcy trustee inspected M & L's inventory and found boxes full of dirt and bricks instead of computer equipment. (Am.Compl. Para. 81.) Plaintiffs commenced this action on November 23, 1994. Plaintiffs, therefore, have not complied with the three year statute of limitations for the Colorado Consumer Protection Act and further claims under the act are barred.

#### 3. *Negligence claim.*

 The Bank contends Plaintiffs' negligence claim is barred by the two year statute of limitations applicable to negligence claims. Colo.Rev.Stat. § 13–80–102(1)(a) (1987). A negligence cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence. Colo.Rev.Stat. § 13–80–108(1) (1987).

In October 1991, the bankruptcy trustee brought suit on behalf of the investors. In January 1992 the Bankruptcy Court ruled that the trustee did not have standing to bring the investors' claims. The Tenth Circuit Court of Appeals dismissed the trustee's appeal of the issue of her standing in September 1994. Plaintiffs' action was commenced on November 23, 1994.

Plaintiffs contend it would have been senseless to file their own suit until the issue of the trustee's standing to bring suit on their behalf was resolved. They assert the issue was not finally resolved until the trustee's appeal to the Tenth Circuit was dismissed in September 1994 and, therefore, the statutes of limitation should be equitably tolled during the appeal.

 The state tolling rule will generally govern in diversity actions absent a direct conflict between a state rule and an over-

riding federal rule or affirmative countervailing federal considerations. *Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 802–03 (10th Cir.1985); *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632–33 (10th Cir. 1993).

Colorado courts have held that "in order for a statute of limitations to be tolled because of equitable considerations, the party asserting the statute as a defense must be the party engaging in conduct that would make the application of the statute inequitable." *Sharp Brothers Contracting Co. and Sanders Co., Inc. v. Westvaco Corp.*, 878 P.2d 38, 44 (Colo.App.1994); *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12 (Colo. App.1991). Also, where it is not necessary for plaintiff to await the outcome of her appeal before being charged with knowledge of defendant's negligence, a pending appeal does not postpone the finality of an otherwise final judgment, and an injury does not disappear because a more final adjudication of the result is sought. *Jacobson v. Shine*, 859 P.2d 911 (Colo.App.1993).

In January 1992 the Bankruptcy Court ruled that the trustee did not have standing to bring the investors' claims. Plaintiffs' action was commenced on November 23, 1994. Plaintiffs, therefore, are barred from bringing further negligence claims.

### 4. *Unjust Enrichment claim.*

The Bank contends the unjust enrichment claim is barred by laches. Laches apply when a plaintiff so neglects to assert its right to file suit for such a length of time that it has caused substantial prejudice to a defendant. *F.D.I.C. v. C. Goldy Limousines, Inc.*, 810 F.Supp. 1124, 1127 (D.Colo.1993). Laches is an inexcusable, unreasonable or prejudicial delay in assertion of a right to the disadvantage of or injury to another. *Id.* The defendant bears the burden of persuasion on this affirmative defense. *Subryan v. Regents of University of Colorado*, 813 F.Supp. 753, 756 (D.Colo.1993). To determine whether there has been an unreasonable and unjustified delay, I must consider both the length of the delay and Plaintiffs' reasons for the delay. *Id.* To establish material prejudice, a defendant must show some

prejudicial change in the condition or relations of the parties. *Id.*

Since this issue requires me to consider matters outside the pleadings concerning affirmative defenses, I decline to rule on this issue unless presented by a motion for summary judgment or trial.

### III. *Conclusion*

For the aforesaid reasons:

(1) The Bank and Individual Bank Defendants' Motions to Dismiss are GRANTED as to the first through twelfth claims for relief.

(2) The Bank's Motion to Dismiss is GRANTED as to the thirteenth, fourteenth and sixteenth claims for relief.

(3) The Bank's Motion to Dismiss is DENIED as to the fifteenth claim for relief.

Plaintiffs may move for leave to amend. Such a motion must be accompanied by the proposed amended complaint. Further vague allegations of fraud, particularly against individual defendants would trigger the imposition of severe sanctions.